Syllabus.

## ESTATE OF I. V. WILLIAMSON, DECEASED.

### APPEAL BY PENNA. CO., ETC., FROM THE ORPHANS' COURT OF PHILADELPHIA COUNTY.

Argued January 27, 1891—Decided October 5, 1891.
[To be reported.]

(*a*) A testator devised and bequeathed his whole estate to his executors for the express purpose of executing the various provisions of his will, authorizing them to lease his realty, and to convert and reinvest any part of the estate, and directing that all rents and income should constitute a part of his residuary estate. After directing the payment of certain annuities and legacies,

(*b*) The will directed the residuary estate to be transferred by the executors to a trustee, who should keep it invested, accumulating and capitalizing the income, until the expiration of ten years after the testator's decease, when it should be divided among such of his grand-nephews and grand-nieces, being the issue of certain brothers and sisters, as should then be living.

(*c*) The will directed, also, that all income thereby given, except a certain annuity, should begin to accrue to the beneficiaries after one year from testator's decease, and not before. During the year following the testator's death, a large amount of income was collected by the executors, but their disbursements for expenses, taxes, and particular legacies, were greater than the income collected:

1. Under the provisions of the will, the income which accrued upon the estate while in the hands of the executors, prior to the commencement of the residuary trust-estate, constituted part of the general estate of the testator in the hands of the executors, applicable to any of the purposes of its administration, including the payment of taxes, expenses, and the particular legacies bequeathed.

2. As the will did not direct the accumulation of income during the first year, and, on the contrary, prohibited the payment of income as such to the trustee until after its expiration, and as the total estate was then much less than at the death of the testator, there was no violation of § 9, act of April 18, 1853, P. L. 503, so far as the income of that year was concerned.

3. Wherefore, the whole balance in the hands of the executors was payable to the trustee under the residuary clause, and the testator's next of kin were not entitled to take the amount of the income so collected by the executors. It would seem, however, that the direction for accumulation of income by the trustee, after receiving possession of the trust-estate, was transgressive of the provisions of the act of 1853.

Before Paxson, C. J., Green, Clark, Williams, Mc-
Collum and Mitchell, JJ.

No. 198 July Term 1890, Sup. Ct.; court below, No. 484
March (?) Term 1890, O. C.

On March 31, 1890, D. B. Cummins, surviving executor
of the will of Isaiah V. Williamson, deceased, filed his first
account, wherein he charged himself with principal amounting
to $10,380,654.86, taking credit for disbursements out of the
same amounting to $1,574,552.60, on account of debts, expenses
of administration and settlement, collateral inheritance taxes
and legacies. He charged himself, also, with income realized
upon the estate between the death of the testator and the filing
of the account amounting to $489,649.97, against which he
took credit for disbursements aggregating $32,193.24, leaving
a net balance of income amounting to $457,456.73.

The said account having been called for audit on April 7,
1890, it was shown that Isaiah V. Williamson died on March 7,
1889, leaving a will dated April 18, 1874, duly admitted to
probate on March 11, 1889. After bequeathing a number of
legacies to collateral relatives and charities, some of them being
given in trust for the benefit of the legatees, said will provided,
further, in part as follows:

14. " The rest, residue, and remainder of my estate, real, per-
sonal and mixed, wherever situated, vested, contingent or
future, after satisfying the foregoing bequests, as such remainder
shall be realized and converted into proper securities by my
executors, as provided in item Seventeenth of this will, shall
be by them transferred and delivered to the Pennsylvania
Company for Insurances on Lives and Granting Annuities, of
this city, which company shall hold the same as a trustee and
in special trust as follows: that is, to keep the same invested
in productive securities in manner provided in items Sixteenth
and Seventeenth, and after deducting the proper charges and
expenses incident to the management of said investments and
securities, to add the interest and income thereof to the capital,
and thus accumulate and increase the fund until the expiration
of ten years after my decease, at which time it shall be divided
amongst such of my grand-nephews and grand-nieces, who shall
then be living, as are the issue of my brothers and sisters named

Statement of Facts.

in the second item of this will, which fund shall then be distributed to each one, per capita and not per stirpes, an equal share thereof: Provided however such shares shall not be paid until each person thus ascertained shall attain the age of twenty-one years, excepting however from this proviso the shares of all who would not attain the age of twenty-one within twenty-one years after my decease; and I direct that this fund shall all be paid to the persons who shall become entitled as aforesaid, at the end of ten years from my decease, within the period of twenty-one years therefrom; and all income accruing after said ten years shall be accumulated on each share and paid with the principal. Thus said entire fund and accumulated income must be paid over within twenty-one years after my decease."

\*     \*     \*     \*     \*     \*     \*     \*     \*

17. " I give and bequeath to my executors and the survivor of them all my bank, railroad, canal and other stocks, bonds, notes, and loans of every description, mortgages and other securities, and all my other personal estate, to enable them freely and fully to execute the various provisions of this will. They may pay said special bequests given by items Fourth to Eleventh, both included, either by assigning any of said personal property (excepting the St. Louis investments) to the legatee at its fair value, to be ascertained and settled by the executors, or they may pay the same in money. [Here followed similar provisions in regard to the making up by the executors of funds which were the subjects of other bequests, stated sufficiently in the opinion of the Supreme Court, infra. The will then continued:] And the rest, residue, and remainder of my estate consisting of bank and other stocks, loans, lands and tenements, ground-rents and all real, personal, and mixed property of every description, and wherever situated in this state and elsewhere, and by whatever title held, whether vested, contingent, present, or future, which may belong to me at the time of my decease, I direct my executors to sell and convert into money (excepting only such personal investments which they may deem suitable to enter into the trust provided for in item Fourteenth), and then reinvest the same in such bonds, loans, or other investments, (excepting capital stocks of corporations or other companies only), as the executors may deem best for the benefit and advantage of the residuary trust

Statement of Facts.

provided for in the fourteenth item of this will; and as such
residuary portions of my estate shall be so converted and rein-
vested by the executors, they will from time to time hand over
to the said trustee, to be by it held and disposed of as in the
fourteenth item provided, and to continue subject to the provi-
sions of item Sixteenth as to the investment and reinvestment
of such fund. And, in executing the powers in the various
items of this will conferred, the executors shall have full and
absolute power to convey in fee-simple, or for less estate, and
for cash or upon mortgage, or upon ground-rent, in such man-
ner and on such terms as they may deem proper, all and every
part of my estate in this will in any way mentioned, including
all my lands and tenements; and all titles and conveyances
which they may make shall be taken free and discharged of all
trusts herein provided for, and without liability on the part of
any purchaser to see to the application of the purchase money;
and the net proceeds of all such sales as well as all rents and
income derived from any part of said property shall constitute
a part of my residuary estate, and be invested as hereinbefore ex-
pressed. And until sale of my real estate my executors shall
have full control over the same, and are authorized to lease or
rent it, and to make such repairs, alterations and changes therein
as they may deem proper; and to pay all taxes and other proper
charges against the same, and to make all insurances thereon
deemed proper by them, and generally they may do and per-
form all acts touching such property as they may deem to the
advantage of my estate, in as full and ample a manner as I can
do. . . . . And I direct that my executors shall apply the pro-
ceeds of sales of real estate equally, and in like manner with the
proceeds of sales of personal estate, in payment of all or any of the
bequests and legacies given by me. . . . . The executors are re-
quested to make up and hand over to the trustee the amounts
called for in items Second and Third within one year after my
decease or as much sooner as may be practicable; and all in-
come given by this will shall begin to accrue to the beneficia-
ries after one year from my decease, and not before then,
excepting the annuity in item Third, which shall accrue from
the date of my decease, and which the executors shall pay
during the first year in order to prevent any delay in paying
that. . . . . All persons who receive portions of the residuary

Adjudication.

estate as provided in item Fourteenth and who do not attain the age of twenty-one within the period of twenty-one years from my decease, shall be paid their shares precisely at the end of twenty-one years from my decease, and to this extent I modify the provision as expressed in item Fourteenth. The investments herein authorized of the residuary estate made by the executors, or authorized by them, are intended to include all investments of the kinds which I may die possessed of (excepting only capital stocks of corporations or associations) and are not confined to legal investments until reinvestments shall be made by the trustee, after the executors and the survivor shall cease to direct or authorize the same as hereinbefore mentioned."

On the hearing, a contest was had as to the proper application and disposition of the income accounted for by the executor; the Pennsylvania Company for Insurances, etc., claiming it as a part of the residuary estate bequeathed to the claimant in trust, by item fourteen of the will, while the next of kin of the testator contended that it constituted part of the income which the testator directed to be accumulated until the expiration of ten years after his death; that such direction was void, and that the next of kin were entitled to receive the income accounted for by the executor, as well as all income accruing thereafter until the expiration of said period.

Upon the questions thus presented, the auditing judge, FERGUSON, J., on April 25, 1890, filed an adjudication, which, after quoting § 9, act of April 18, 1853, P. L. 503, proceeded:

This act has received judicial interpretation in a number of cases in this state, beginning with Washington's Est., 75 Pa. 102, and followed by Carson's App., 99 Pa. 325; Schwartz's App., 119 Pa. 337; Mitcheson's Est., 11 W. N. 547; Sergeant's Pet., 11 Phila. 8; Grim's App., 109 Pa. 391; McKee's App., 96 Pa. 277; Eberly's App., 110 Pa. 95.

It is not necessary to refer particularly to all that was decided by these cases, or the reasoning by which the conclusions were reached. It is sufficient for the purposes of this case to say that, in the opinion of the auditing judge, they settle conclusively that, while under the British statute upon this subject, there might be accumulations for an absolute period of

Adjudication.

twenty-one years from the death of the testator, under our statute the accumulation is confined to the minority of the beneficiary who under the will takes the fund at majority.

In other words, there can be no trust for accumulation except for minors; and, as twenty-one years is the limit of minority, that is the utmost period of time for which any trust for accumulations can exist in this state.

Is the trust created by this testator's will transgressive of this statute? The answer to this question depends upon whether it is a trust for minors, who were in existence at the time of the testator's death and who would be entitled to take upon attaining their majority.

There are no persons to-day who answer this description, because it is impossible to ascertain now who will be the persons ultimately entitled to receive this residuary estate. The testator says, "At which time (the expiration of ten years after his decease) it shall be divided amongst such of my grand-nephews and grand-nieces, who shall then be living." This estate is therefore not vested in any one. It is purely contingent, and it is absolutely impossible to-day to determine who are to take it. They cannot now be ascertained. There may be grand-nephews and grand-nieces living to-day, who may be dead on the seventh day of March, 1899, and there are children now unborn who, when that time arrives, will answer in full the description of those who are to take; so that we must wait until the expiration of the time fixed by the testator, before we can know who are to be the recipients of his bounty: McBride v. Smyth, 54 Pa. 245; Holme's Est., 126 Pa. 223. Such being the case, how can we conclude that this trust for accumulations is for the benefit of minors, when we do not know who it is for; and if we cannot so conclude, this trust must fall.

If this trust is null and void, as the auditing judge thinks it is, to whom do the " rents, issues, interest and profits, so directed to be accumulated contrary to this act," go? By the provisions of the act they " shall go to and be received by such person or persons as would have been entitled thereto if such accumulation had not been directed."

As a rule, the residuary clause of a will carries all of an estate which has not been otherwise thereby disposed of, and

Adjudication.

therefore covers all void and lapsed legacies. If this direction for accumulation had been with reference to some portion of the testator's estate other than the residue, it would then have fallen into and been disposed of by the residuary clause ; but it is the income of the residuary estate itself, which is to be accumulated, and if this direction is void, there is but one conclusion that can be reached, and that is, that as to the income which the testator has failed to legally dispose of by the residuary clause of his will, he died intestate, and the same must go to and be distributed among his next of kin according to the intestate laws of this commonwealth : Grim's App., supra ; Mellon's Est., 16 Phila. 323.

The account shows that the income of this estate, in the hands of the accountants for the first year, amounts to the sum of $457,456.73. The question was raised whether this fell into and became a part of the principal which passed to the trustees under the residuary clause, or, whether it remained income, and as such, if the direction to accumulate is void, was undisposed of by the bill. Mr. Johnson, for the trustees, claimed that this income became principal and passed under the residuary clause.

Every will takes effect from the death of the testator, and all its provisions must be presumed to relate to things as they existed at that time. When, therefore, a testator bequeaths all the rest, residue, and remainder of his estate, he means all that is then left after debts, expenses, and legacies previously given by him have been paid. While one year from the time of death has been fixed by the law, and in this particular case by the testator himself, as the time within which his estate must be settled, this does not alter the fact that the status of the corpus of the estate is fixed as of the time of the death of the testator. For this reason, in every properly-stated account, as in the one now before us, the account of the corpus of the estate is kept separate and distinct from the income, whether of the first or any subsequent years. This has been frequently held to be the only way to state accounts for the proper settlement and distribution of estates. In fact, it has been made one of the rules of this court, that accounts must be so stated. Where, in most cases, would be the use of this care and particularly with reference to principal and income, if after all the

Adjudication.

provisions of the will had been carried out, what was left, whether principal or income, fell into the residue? That the income does not fall into the residue, has been held in a number of cases to which the auditing judge will simply call attention : Bird's Est., 2 Pars. 168 ; King's Est., 11 Phila. 26 ; Sergeant's Est., 9 Phila. 346.

In his will, the testator directed that " all income given by this will shall begin to accrue to the beneficiaries after one year from my decease, and not before then ; " so that there can be no question but that the beneficiaries under this testator's will do not take the income until a year after his death. But this direction can have no application to the income of the residue, which he did not give to any one, but which he directed to accumulate. That must either be accumulated, as directed by the will, or if this direction is void, go to the next of kin.

It was urged that the estate which is to pass under the residuary clause of testator's will to the trustee, is not the residuary estate as it existed at testator's death, but as it existed a year afterwards, when it was augmented by nearly a half a million dollars income, because the testator fixed that time for the settlement of his estate and until then the residuary estate could not be ascertained. This, however, presents no different case than we have in every decedent's estate where the law fixes the same time for its settlement. In no case can the exact amount of the residue, in dollars and cents, be ascertained until the account is filed and adjudicated ; but this does not alter the fact that the estate is what existed at the moment of his death, and the residue thereof is what is then left, after all the conditions of the will have been fulfilled, even though the amount cannot be ascertained until the settlement. It would hardly be contended that this income would be subject to the collateral inheritance tax, yet to hold that it became part of the principal of the estate would make it so liable.

It was further claimed that one year was the time fixed for the settlement of this estate, and the handing over of the residue to the trustee ; and that as this will directed accumulation of the residuary estate by them only after it came into their hands, this income of the first year could not be considered as accumulation of income but as principal. If this position is tenable, then the testator might have avoided the statute

### Adjudication.

altogether, by simply postponing the settlement of his estate for several years. If he could thus accumulate for one year, he might continue it for ten years, without the intervention of a trustee or without any direction in his will to accumulate, but by simply leaving it in the hands of his executor and fixing a distant time for the settlement of his estate. When that time arrived after the legacies, etc., were paid, all that would be left, principal and income, would be residue and pass under the residuary clause, and thus by indirection he might accomplish what he could not do directly.

It is further claimed that there has been no accumulation during the first year, because the estate taking it as a whole is not now as large as it was when the testator died, having been diminished by the payment of legacies, taxes, expenses, etc., to an amount greater than the income, and therefore, there has been no violation of the statute. The answer to this is that there was no direction to accumulate the whole estate, but only the residue, and that consists only of what is left after the other things have all been paid. If to this residue is added this large sum of money, it seems to the auditing judge as if this were an accumulation. The corpus of the estate may have been diminished, but the residuary estate, to which the trust for accumulation alone referred, has been largely increased.

Without any further discussion of this matter, the act itself in terms provides that there shall be no accumulation " only after such decease during the minority," etc. Any accumulation after the death of the testator is therefore prohibited.

The auditing judge awards the income for the year, as shown by the account, to the next of kin of the testator.

—A decree of distribution in accordance with the opinion of the auditing judge was thereupon reported. Exceptions to the adjudication, after argument thereof, were dismissed by the court in banc upon the opinion of the auditing judge, and the adjudication confirmed; whereupon, the Pennsylvania Company for Insurances, etc., trustee, took this appeal, specifying that the court erred:

1. In refusing to award to the trustee, as part of the trust fund to be held by it, the balance of income accounted for by the executor.

2. In distributing said income among the testator's next of kin.

Arguments.

*Mr. John G. Johnson,* for the appellant:

If the only point decided by the court below had been that the trust created by the testator's will is transgressive of the act of April 18, 1853, P. L. 503, we might not, in view of numerous decisions of this court, somewhat to that effect, trouble it with an appeal. But we contend that, under the terms of the will, the trustee was entitled to take the income collected by the executor, as a part of the residuary estate bequeathed to it, and that the act of 1853 does not defeat that right, said income not having been accumulated in pursuance of any testamentary direction to accumulate, but having been collected by the executor in the course of his general administration of the estate. We do not contend that an estate may be permanently held in trust, so as to become greater in amount than that possessed by the testator at the time of his death, but we do contend that when the estate ultimately turned over to the trustee is less than what the testator died possessed of, and the trustee is compelled to distribute the income thereon, as it shall accrue upon the estate so delivered to him, the statute is not violated.

*Mr. George Tucker Bispham* and *Mr. Richard C. Dale,* for the appellees:

1. That the direction for accumulation contained in the will is in conflict with § 9, act of April 18, 1853, P. L. 503, cannot even be regarded as doubtful, under the authorities: Washington's Est., 75 Pa. 102; Carson's App., 99 Pa. 325; Schwartz's App., 119 Pa. 337; Mitcheson's Est., 11 W. N. 547; Sergeant's Pet.,11 Phila. 8; Grim's App., 109 Pa. 391; McKee's App., 96 Pa. 277; Eberly's App., 110 Pa. 95. The consequence is that the income of the residuary estate, directed to be accumulated, must, under the provisions of the statute, go to the next of kin: Sergeant's Pet., 11 Phila. 8; Grim's App., 109 Pa. 391. This is not seriously controverted by the appellant, but it is sought to obtain the income of the first year by an ingenious argument, the answer to which will be found in the following suggestions:

2. The residue of the estate is the capital thereof, after deducting the expenses of administration, debts and legacies, all which are necessarily payable out of principal. Moreover,

Opinion of the Court.

the directions as to transferring securities and investments show that this was the testator's intent. The estate now before the court, therefore, consists in law of two parts : (*a*) the corpus or principal thus diminished, and (*b*) the income which has accrued during the year. To whom does such income belong? It is well settled that when there is a gift for life, or other limited period, with remainder over, the tenant of the particular estate is entitled to income from the date of the testator's death, not simply from the end of the year after his death: Bird's Est., 2 Pars. 168; King's Est., 11 Phila. 26; Sergeant's Est., 9 Phila. 346.

3. Such being the rule, it is plain that in the present case there is a division of the ownership of the residuary fund into a particular estate and estates in remainder, the former being for the term of ten years devoted by the testator to accumulation, and the estates in remainder being the interests which arise after the expiration of that period. Now, as the next of kin are entitled to the income during the period devoted by the testator to accumulation, it necessarily follows, under the decisions last cited, that they are entitled to it from the testator's death. It is immaterial whether it is to be considered as distributable out of the hands of the executor, or out of the hands of the trustee. The question is not whether the testator might have directed that the specific legacies should be paid out of the income of the first year; he did not so direct.

OPINION, MR. JUSTICE GREEN:

The practical and only question in this case is, whether the residuary clause of the testator's will is in conflict with the provision against accumulations of the act of April 18, 1853, § 9, P. L. 503, so far as the income of the estate for the first year after the testator's death is concerned. As to the remaining nine years of the period of ten years, during which the residuary income is to be accumulated, there is no question before us, and probably never will be, in view of the very direct provision for accumulation contained in the residuary clause of the will.

If the will does not direct an accumulation which may, or must be operative upon the income of the first year, it does not transgress the statute. In order to determine this question,

Opinion of the Court.

we must first regard the residuary clause of the will by itself. It is the fourteenth item of the will. It first directs as follows:

" The rest, residue, and remainder of my estate, real, personal and mixed, wherever situated, vested, contingent or future, after satisfying the foregoing bequests, as such remainder shall be realized and converted into proper securities by my executors, as provided in item Seventeenth of this will, shall be by them transferred and delivered to the Pennsylvania Company for Insurances on Lives and Granting Annuities, of this city, which company shall hold the same as a trustee and in special trust as follows : " . . . . .

It will be observed that there is no direct gift of the general residue of the estate to the trustee. The testamentary direction is that the executors shall transfer and deliver to the trustee the residue of the estate left after satisfying all the previously mentioned bequests, and after the " remainder shall be realized and converted into proper securities, as provided in item Seventeenth of this will." Turning to item seventeenth, we find that it is an absolute bequest of the entire personal estate of the testator to the executors, " to enable them freely and fully to execute the various provisions of this will." Next, it provides that the executors may pay the special bequests given by items fourth to eleventh, both inclusive, either by assigning any of the personal property (excepting the St. Louis investments) to the legatee at its fair value, " or they may pay the same in money." Next, the executors are directed to make up the fund provided for by the second item, by selecting real-estate loans in St. Louis, to be valued by the executors at par, and for any deficiency of the same they shall select any good securities out of the estate, and at their own valuation. The clause next directs the executors to make up the fund required by the third item, by either selecting any good securities of which the testator died possessed, " or by purchasing or investing in new ones," and they " shall settle and fix the value of the securities which they turn over to the trustees." Next, the executors are directed to select and hand over to the institutions named in the twelfth item the several amounts therein specified, " out of the good stocks, bonds, or other securities which I may die possessed of, or which may come to the hands of the executors thereafter by purchase," with power to make

up any deficiency of good securities by selling such as are not deemed good, and replacing them by others which are good. This item disposes of seven hundred thousand dollars, and the executors alone are required to pay it all. The fund required by the thirteenth item is directed to be made up by the executors, by handing over such securities as they think best, or they may convey to the trustee named in the thirteenth item, any of the testator's real estate upon the trust mentioned in the item. This item carries three hundred thousand dollars, all of which is to be paid by the executors. In the next place, the entire residue of the testator's whole estate, real and personal, and of whatever character, is given absolutely to the executors, with positive direction to sell it all and convert it into money, (excepting only such personal investments as may enter into the trust provided in the fourteenth item), and then reinvest the same in bonds, loans or other investments, at their discretion, for the benefit of the residuary trust in the fourteenth item; and the executors are directed, as such residuary portions of the estate are converted and reinvested, to hand them over to the trustee of the residue, to be held according to the fourteenth item. Full power is given to the executors to carry out this portion of the will by making any kind of sales and upon any kind of terms of "all and every part of my estate in this will in any way mentioned," with no restriction of any kind. And then this item of the will (seventeenth) proceeds thus:

"And the net proceeds of all such sales, as well as all rents and income derived from any part of said property, shall constitute a part of my residuary estate, and be invested as hereinbefore expressed. And until the sale of my real estate my executors shall have full control over the same and are authorized to lease or rent it, and to make such repairs, alterations and changes therein as they may deem proper, and to pay all taxes and other proper charges against the same, and make all insurances thereon deemed proper by them, and generally they may do and perform all acts touching such property as they may deem to the advantage of my estate, in as full and ample a manner as I can do."

We think it manifest from the provisions of this section, that the executors were to have the fullest and most absolute power, control, management and disposition of every fragment of the

estate, including its income and its rents, issues and profits, until the time of its being handed over to the residuary trustee, to as great an extent as the testator himself had in his lifetime. All rents, and all income derived from any part of the property of the testator, are expressly and absolutely given to the executors, under this clause of the will, by way of a residuary bequest, and everything that is to be done to or with the estate or its proceeds, prior to the taking effect of the residuary trust, is to be done by the executors. All the debts, all the costs and expenses of the administration, all repairs, taxes, insurance and other charges upon real estate, all legacies, gifts, and bequests, of every description, are to be paid by the executors before the residuary trust-estate under the fourteenth item arises. And the rents and income received by the executors before the residuary trust comes into being, are explicitly directed "to constitute a part of my residuary estate." We think it cannot be doubted that under this provision not only the estate of which the testator died seised or possessed, but all rents and income, "derived from any part of said property," after his death, entered into and formed part of the general residuary estate in the hands of the executors, prior to the existence of the residuary trust-estate. More than this, although this was residuary estate in terms, it was given to the executors with express directions to apply it to the payment of all bequests and legacies, by a further clause of the seventeenth item of the will in these words: "And I direct that my executors shall apply the proceeds of sales of real estate equally, and in like manner with the proceeds of sales of personal estate, in payment of all or any of the bequests and legacies given by me."

The will is peculiar. It gives the whole estate to the executors in the first clause of the seventeenth item, for the express purpose of executing the various provisions of the will, and further on, in the same item, it gives them the absolute and entire residue of the estate, no matter how, or in what manner, or from what source derived, expressly including rents and income, also with express instructions to pay all kinds of expenses and charges, and in addition all bequests and legacies. It may be that there is redundancy in these provisions, but it is entirely true that the testator fully intended to place every kind of asset, including rents and income, received after his death, in the

hands of his executors, to be by them applied to the full settlement of his estate, before the residuary trust created by the fourteenth item came into existence.

If there were no other provision in the will applicable to the subject of the present contention, we would be clearly of opinion that income which accrued in the hands of the executors prior to the commencement of the residuary trust-estate under the fourteenth item, would constitute part of the general estate of the testator in the hands of the executors, applicable to any of the purposes of its administration. But there are additional provisions of the will which are strongly confirmatory of this view. In the latter part of the seventeenth item there is this provision: " And all income given by this will shall begin to accrue to the beneficiaries after one year from my decease, and not before then, excepting the annuity in item Third, which shall accrue from the date of my decease, and which the executors shall pay during the first year, in order to prevent any delay in paying that." This provision is a positive prohibition against the payment of any income to any beneficiary except the one mentioned in the third item. It is *all* income, and not merely the income upon the several legacies specifically bequeathed, that begins to accrue at the end of the first year. By necessary consequence, all the income that does accrue during that year goes into the general estate and becomes part of its corpus, with only the one exception otherwise directed. A positive direction to the contrary in the bequest of the residuary trust might overcome the force and meaning of the language we are now considering; but there is no such direction, as appears by the further language of the fourteenth item, to which we will now recur.

After the first portion of that item which we have already considered, immediately follows the provision as to what is to be done by the trustee with the securities transferred by the executors, in these words:

" That is, to keep the same invested in productive securities, in manner provided in items Sixteenth and Seventeenth, and, after deducting the proper charges and expenses incident to the management of said investments and securities, to add the interest and income thereof to the capital, and thus accumulate and increase the fund until the expiration of ten years after

my decease, at which time it shall be divided amongst such of my grand-nephews and grand-nieces, who shall then be living, as are the issue of my brothers and sisters named in the second item of this will," etc.

It will be observed at once that there is no provision for the accumulation of interest for each one of the ten years next following the testator's death. The expiration of ten years after the testator's death is simply the period at which the accumulation shall cease, and there is no provision as to when that period shall commence. It could not commence immediately at the testator's death, because the trust fund did not, and could not, then come into the hands of the trustee of the residuary trust-estate. On the contrary, the settlement of the estate by the executors must proceed and be completed before the residuary trust fund could reach the trustee, or the amount of it be known. It is the residuary trustee who is to accumulate the interest, but nothing of that kind could be done until the trust fund came into the possession of the trustee. The executors had very large sums to pay before the estate could be settled and the residue ascertained. The legacies alone far exceeded one million dollars. The payment of the collateral inheritance tax consumed nearly four hundred fifty thousand dollars, and the executors' commissions were over two hundred thousand dollars. There was nothing in the will to prevent the executors from using any assets of the estate, whether principal or income, to pay these legacies, taxes and expenses. The will made no distinction between principal and income as assets, and required no interest to be paid during the first year to any legatee but the one mentioned in the third item. It prohibited the payment of all other income as such, until after the expiration of the first year. How, then, can it be said that the will directed the accumulation of the income for the first year, when there is not only no such provision in the will, but an express direction to the contrary? There is neither a necessary implication, nor any implication, either that the testator intended such an accumulation, or that such an accumulation is possible under the will. The residuary trustee did not have the fund from the death of the testator, and consequently could not accumulate it by income from that time. In point of fact there was no accumulation of the first year's income

even by the executors. The payments made by them of lega-
cies, expenses and charges, were very much greater than the
first year's income, and the total estate at the end of the first
year was much less than at the death of the testator. Where,
then, is the accumulation of the first year's income? It does
not exist in fact, it is not directed by the will, it is not within
the power of the executors to produce it, and the residuary
trustee is prohibited from doing so, because no income can
begin to accrue to any beneficiary until after the end of the
first year, and it would be only from that time that any increase
of the principal of the trust fund from accumulating income
could commence. This money has not been paid to the resid-
uary trustee, nor can that trustee ever have it under the terms
of the will. It has all been needed for use in the settlement
of the estate by the executors, and it has been so used. By
the positive provision of the seventeenth item of the will, all
rents and income derived by the executors from property which
the testator thus describes, "all and every part of my estate
in this will in any way mentioned, including all my lands and
tenements," shall constitute a part of the residuary estate.
As such, it entered into the general estate of the testator in the
hands of the executors, and was applicable by them to the pay-
ment of debts, legacies and expenses, and only the remainder,
after all these deductions were made, was payable to the resid-
uary trustee. That trustee never did, and never could, accu-
mulate that portion of the income which accrued during the
first year, and hence the statute of 1853 has not been, and can-
not be transgressed, so far as that year's income is concerned.

> The decree of the Orphans' Court is reversed at
> the cost of the appellees; and the record is re-
> mitted, with instruction to re-state and correct
> the account in accordance with this opinion.