# In re Estate of John Rogers, deceased.  Hattie Flannery's Appeal.

*Will—Effect of legacy for particular purpose.*

If a sum of money be bequeathed for the purpose of purchasing real or personal property for a particular person, the legatee may claim the money without applying it, or binding himself to apply it, to the specified purpose.

*Will—Gift—Legacy—Accumulations.*

Testator directed his executors and trustees to collect " all my rents or monies that may be due me, to pay all my debts, taxes, insurance, etc., keep the property in repair.  After which the net surplus rent shall be deposited at interest until it amounts to ten thousand dollars, where it shall remain, and the annual interest added thereto, for the purpose of building a four-story brick business house " on a lot designated.  The testator further directed that the building was not to be constructed until it was finally settled whether a certain municipal improvement was to be made.  He devised the lot upon which the building was to be erected to the children of a deceased son.  He further directed that after the above instructions had been carried out the surplus should be applied, first to his wife's annuities, and then divided equally among his two daughters and the wife of his deceased son for the use of herself and her children; the youngest of which was nine years old at testator's death.  *Held*, (1) that the gift was not void as within the prohibition of the statute as to accumulations; (2) that the income should be paid to the trustees, to be accumulated for the purpose of constructing the building referred to in the will.

Argued Nov. 9, 1896.  Appeal, No. 193, Oct. Term, 1896, by Hattie E. Flannery, from decree of O. C. Allegheny Co., Sept. Term, 1896, No. 260, distributing fund.  Before STERRETT, C. J., GREEN, WILLIAMS, MCCOLLUM, MITCHELL, DEAN and FELL, JJ.  Affirmed.

Exceptions to decree of distribution.

OVER, J. filed the following opinion:

John Rogers died testate June 12, 1894.  By his will, dated December 13, 1892, he gave, in the third item, to his wife, Johanna, who is still living, an annuity of $600 " according to an ante-nuptial agreement, some bank stock, and the homestead for life, on condition that she share the homestead with the wife and children of my son John T."  The following is a copy of the balance of the will:

"Item 7. To my daughter-in-law, Sarah F. Rogers, I give four hundred dollars a year for the use of her three children by my son John, payable quarterly until the estate is divided, when this sum shall be cancelled, I also give her in common with my wife for the use of herself and children the use of my house and furniture, she paying a part of the expenses.

"Item 8. To my grandson, Frank C. Rogers, and his heirs, I give, at my wife's death or marriage, my house and lot No. 142 Meyran avenue, City of Pittsburgh, with the furniture, etc., thereto belonging, I also give him my burial lot in Calvary Cemetery, I also desire him to be continued at college until he graduates, the cost of which is to be paid out of my estate, I also desire that he shares the home with his mother and sisters, if they desire it.

"Item 9. I hereby appoint my cousin, James R. Pearson, and my sons-in-law, James H. Flannery and Albert A. Jackson, my executors and trustees during the life of my wife, and until the final settlement of my estate, to carry out all my instructions expressed herein.

"1st. I desire them to collect all my rents or monies that may be due me, to pay all my debts, taxes, insurance, annuities, etc., etc.; keep the property in repair. After which the net surplus rent shall be deposited at interest until it amounts to ten thousand dollars, where it shall remain and the annual interest added thereto for the purpose of building a four-story brick business house on the lot now occupied by Peter Cavaney on Fifth avenue; the store to connect with No. 8 Wylie avenue, and to run through from street to street. The building and improvements are not to be made until it is finally settled whether the 'hump' is to be cut down or not. I will leave further instructions in writing for their guidance.

"10. When all the above instructions are carried out, I desire that first, my wife's annuities shall be paid and the surplus divided equally between my daughters, Hattie, Lizzie, and my daughter-in-law, Sadie, for the use of herself and children by my son John. The four hundred dollars bequeathed to her in item 7, to be cancelled on her receiving the above dividends.

"Item 11. At my wife's death, if the house on Fifth avenue has been built and the estate free from debt, then the final distribution shall be made on the basis of the last triennial city

assessment prior to my death, the total valuation of my Third and Fifth avenue property shall be added together, and then divided by three, my daughters, Hattie and Lizzie, paying in cash to the children of my son John the difference of the value of the property 96 Fifth avenue and the property given to them on the 'hump' in the Fifth ward.

"Item 12. To my daughter, Mrs. Hattie E. Flannery, and her heirs, I give and bequeath the undivided one-half of the house and lot No. 96 Fifth avenue, Third ward, city of Pittsburgh, she paying to the children of my son John whatever is necessary to equalize the difference of value between that property and that in the Fifth ward given to them.

"Item 13. To my daughter, Mrs. Sarah Elizabeth Jackson, and her heirs, I give and bequeath the undivided one-half of the house and lot No. 96 Fifth avenue, Third ward, city of Pittsburgh, she paying to the children of my son John whatever is necessary to equalize the difference of value between that property and that in the Fifth ward given to them.

"Item 14. To my grandchildren, Frank, May and Katie Rogers (children of my son John), and their heirs, I give and bequeath the two-story house and lot No. 8 Wylie avenue, and the adjoining one on Fifth avenue, Fifth ward, city of Pittsburgh, share and share alike. If either of them shall die without issue, then their share shall be divided equally between the survivors, I hereby appoint their mother, Sarah F. Rogers, their guardian until the youngest is of age (provided she does not marry again). I advise them not to sell this property for it will become very valuable.

"Pay the taxes and divide the net rents between you. Their third of the sale of the old homestead, which I gave them last October, is invested for them, if the four hundred dollar legacy is not enough for them they can draw the interest, but it will be better for them if they let it accumulate till they are settled in life, when each one can have their third. I also give them the money to be paid by their aunts, Mrs. Hattie Flannery and Mrs. Sarah E. Jackson, to equalize the value of their share of my estate."

The premises devised to the children of his deceased son John in the 14th item are the same referred to in 9th item and are situate on Fifth avenue opposite the courthouse. The title

"hump" in Pittsburg parlance designates the part of the city in its vicinity. On the 14th day of May, 1888, ordinances were presented in councils to grade the streets of this district, action upon which was indefinitely postponed November 12, 1888. In 1891 and 1892 the question was discussed but no action has been taken by councils and the "hump" has not been graded down.

The testator left no instructions for the "guidance" of the trustees as to the erection of the building on the lot devised to his grandchildren.

Their ages at his death, June 12, 1894, were as follows: Frank H., sixteen; May, fifteen; and Kate, nine. It is admitted that if the present net income of the trust estate continues, the $10,000 directed to be accumulated in the ninth item of the will will be accumulated within a period of five years after the testator's death. The fund for distribution, $3,178.87, is the net income since the death of the testator, after the payment of all charges and annuities, and it is conceded that it should be distributed either to the trustees under the ninth item of the will, or one third to the testator's grandchildren, and one third to each of his daughters, Mrs. Flannery and Mrs. Jackson, under the tenth item.

It is contended by the counsel for the testator's daughters that there is no express gift of the $10,000 referred to in the ninth item of the will; that there is a possibility that it might not be accumulated within the period limited by the statute regulating accumulations; that the gift is in abeyance and does not vest until it is finally settled "whether the 'hump' is to be cut down or not," which is so indefinite as to be obnoxious to the rule against perpetuities; and that, therefore, the provisions of the will relating to the accumulation of the fund and its expenditure are void. It is clear that after the testator's widow, the children of his deceased son, John, were special objects of his bounty, and preferred to the other beneficiaries. He provided a home for them and their mother with his widow, gave them annuities whilst the fund was accumulating, and made no provisions for his daughters during that period. The value of the lot devised to them and of the one devised to the children were to be equalized upon the basis of the assessed value at the time of his death, by the payment by the daughters to them

of sufficient to make the value of their share one third of the whole. In addition to this, it was his manifest intention that the value of their devise should be increased by the expenditure of the $10,000, to be accumulated from the income of the greater part of his estate, in erecting a building upon it. The question is whether this intention is to be defeated. Whilst the testator did not use apt words, yet the will vests the legal title to the greater part of his estate in his executors for the purposes specified in it. The legal title to the fund to be accumulated was then vested in them, and the equitable title in the testator's grandchildren, for whose benefit it was to be expended in the improvement of the lot devised to them. If the testator had devised the real estate included in the trust directly to his grandchildren to hold until the net rents received by them, after the payment of the fixed charges, amounted to $10,000, with remainder at that period to them and his two daughters, subject to the widow's annuity, the statute regulating accumulations clearly would not apply. This in effect he did, and the fact that he vested the legal title in trustees with directions as to the application of the accumulations is immaterial. It was a present beneficial gift of the income until a certain sum should be received. In discussing the question of the application of the statute to such cases in Wahl's Estate, 26 W. N. C. 249, Judge PENROSE said : "In all cases, however, the first inquiry is how far, if at all, has the will under consideration directed, or indirectly occasioned, an accumulation contrary to the statute. The term itself implies a withholding of income for the purpose of creating an increased and constantly increasing fund for distribution at a future time ; and, manifestly, a present beneficial gift of income until a certain sum shall have been received by the donee, is not in itself forbidden by anything in either the letter or spirit of the act. A direction to apply rents or income in payment of a specified sum to a designated person is no more a direction to accumulate than a gift of the estate until out of the rents the donee has received an equivalent amount would be. Such a direction gives to the legatee a vested interest in the rents, etc., as they arise ; and if there be coupled with it a provision for accumulation until the trustee shall have enough to pay in full, the only person having the right to complain is the legatee himself—the person who, in the lan-

guage of the act, 'would have been entitled . . . . if such accumulation had not been directed.' The authorities upon this subject are very fully collected and commented on by Mr. Scott in his admirable essay on Trusts for Accumulation, sections 110, 111, etc. See also Lewin on Trusts, ch. VII. sec. 1, pl. 12, etc.; Gray on Perp., sec. 671 et seq. Of course, if the person so entitled chooses to waive his right to call for the rents as received by the trustee, any interest arising from their investment follows the rents themselves, and belongs to him."

The daughters do not appear to be interested in the question raised, in regard to the directions as to the use of the fund violating the rule against perpetuities, for if they are impossible or void for any reason the beneficiaries will take the fund: McIntyre v. McIntyre, 123 Pa. 335; Culins' Appeal, 20 Pa. 243. The gift in the ninth item, however, seems to be either a devise of rents amounting to $10,000, or a legacy of that amount for a particular purpose. In 1 Jarman on Wills, 397-8 (side paging), it is said: "Where the purpose of the gift is the benefit solely of the donee himself, he can claim the gift without applying it to the purpose, and that, it is conceived, whether the purpose be in its terms obligatory or not. . . . Thus if a sum of money be bequeathed to purchase for any person a ring, or a life annuity, or a house, or set him up in business, or for his maintenance and education, or to bind him apprentice, or towards the printing of a book, the profits on which are to be for his benefit, the legatee may claim the money without applying it or binding himself to apply it to the specified purpose; and even in spite of an express declaration by the testator, that he shall not be permitted to receive the money. . . . These cases rest on the principle that the court will not compel that to be done which the legatee may undo the next moment, as by selling the thing to be purchased, or giving up the business."

This principle applies here, for if the fund be expended as directed, the devisees if of age, could at once sell the lot and get the money; and if all would not join in a sale each could sell his or her undivided interest. It is therefore optional with the testator's grandchildren, whether they will take the money, or have the building erected. It follows that the testator's grandchildren are not bound by the directions, as to the accumulation and expenditure of the fund; and if of full age, by the

terms of the will, would be entitled after payment of the fixed charges to the rents and income directed to be accumulated. If then it be conceded that the act regulating accumulation applies, those made within the limited period would be good; and as the fund here was accumulated within that period, it must, in any view of the case, be distributed to the trustees under the ninth item of the will.

*Error assigned* was decree of the court.

*Wm. M. McGill*, and *Willis F. McCook*, for appellant.—The trust for accumulation violated the rule against perpetuities: Gray on Perpetuities, sec. 201; Lawrence's Est., 136 Pa. 363; Mergenthaler's App., 15 W. N. C. 441; Coggin's App., 124 Pa. 27; Scott's Trusts for Accumulations, secs. 52, 93, 94; Washington's Estate, 75 Pa. 106; Grim's Appeal, 109 Pa. 391; Carson's Appeal, 99 Pa. 325; McKee's Appeal, 96 Pa. 284; Mitcheson's Estate, 22 W. N. C. 46; Schwartz's Appeal, 119 Pa. 337; Brooks' Estate, 140 Pa. 84; Sharps's Estate, 155 Pa. 289; Eberly's Appeal, 110 Pa. 95; Hibb's Appeal, 143 Pa. 217. Even if the trust to the extent of accumulating the $10,000 fund be held valid, the use to which said fund is to be applied is too remote: Tregonwell v. Sydenham, 3 Dow. 194.

*W. H. McClung*, with him *J. A. Evans*, for appellee.—If the will is capable of a construction which will avoid the rule against perpetuities the court will place such construction upon it: McBride's Est., 152 Pa. 192.

If the $10,000 fund vests in the grandchildren within the proper period, the fact that restrictions are imposed which may postpone its enjoyment until a time beyond that permitted by the rule against perpetuities, will not avoid the gift; the restrictions are void, the gift remains: Gray on Perpetuities, sec. 205; Yard's App., 64 Pa. 96; Perry on Trusts, sec. 397; 1 Lewin on Trusts, p. 90; Manners v. Library Co., 93 Pa. 175; Philadelphia v. Girard Heirs, 45 Pa. 27; Tappan's App., 52 Conn. 419; Finlay v. King, 3 Peters, 374.

The direction to accumulate the sum of $10,000 from the surplus rents of the testator's productive property for the purpose of constructing a building upon a valuable but unproductive

property devised to the grandchildren is not in contravention of section 9 of the act of April 18, 1853; such accumulation is not permanent in the sense that offends against the statute, but merely temporary, and in aid of a judicious management and distribution of the testator's estate: Endlich on Statutes, 399; Big Black Creek Imp. Co. v. Com., 94 Pa, 455; Thellusson v. Woodford, 4 Vesey, Jr. 227; Bacon's Abridgements, under Title of Statutes, Rules of Construction, sec. 5; The People v. Utica Ins. Co., 15 Johnson, 379; Jackson v. Collins, 3 Cowen, 96; Canal Co. v. Railroad Co., 4 Gill and Johnson, 152; Sedgwick on Statutes, 256.

In the cases cited by appellant the court has had to do with cases involving accumulations in the strict and technical sense of the word, accumulations for the sake of accumulation without more. In none of them was the accumulation of a mere temporary character in aid of a specific and legitimate purpose such as the payment of debts, the proper management of the estate, or in aid of a judicious distribution of the estate.

PER CURIAM, January 4, 1897:

We find no error in this record. The questions involved appear to have been fully considered and rightly decided by the learned court below. For reasons given by the auditing judge the decree should not be disturbed.

Decree affirmed and appeal dismissed at appellant's costs.