## Nixon v. Nixon

*William J. Caldwell*, for plaintiff.

*Joseph R. McFate*, for defendant.

BRAHAM, P. J., December 1, 1948.—This is a declaratory judgment proceeding to determine whether plaintiff holds certain real estate derived from the estate of Mary Jane Jay Reinholdt free from a charge for the erection of a mausoleum which was attempted to be imposed by the will of Mrs. Reinholdt. It was

argued before the court en banc without the taking of testimony. Accordingly, the case is before us on bill and answer. Following the familiar proceeding outlined in Kelly et al. v. International Clay Products Co., 291 Pa. 383, discussed in Pearsall v. Pazor, 61 D. & C. 659, 660, and adopted in Pa. R. C. P. 209, the facts must be found by accepting as true all well pleaded and undenied averments of the petition, amended petition and the answer. So arrived at, the facts, or sufficient of them to enable us to decide the question before us, are as now stated.

Mary Jane Reinholdt died domiciled in New Castle, Lawrence County, Pa., on December 17, 1912. By a codicil to her will she devised a house and lot known as 7720 Juniata Street in the East End district of Pittsburgh, Allegheny County, Pa., to her daughter, Mary Luella J. Reed "in fee simple subject, however, to the encumbrance placed thereon in paragraphs one, two, three, four and five of the said will". These encumbrances may best be understood by quoting verbatim the first five paragraphs of the will:

"First: I desire and direct that Elizabeth M. Agnew take charge of my body and of my house as soon as possible after my death, and that she properly prepare my body for interment, and the house for the funeral services, and that for her services in this matter she shall be paid Twenty five Dollars out of my estate.

"Second: I direct that my debts and funeral expenses be paid as soon after my death as may be reasonably practicable.

"Third: I direct my executors to purchase one of the best lots in Oak Park Cemetery in said City suitable for a mausoleum of the same general character as the Genkinger Mausoleum now in Greenwood Cemetery in said City, but of a size sufficiently large to accommodate only ten bodies. And I direct that my

body and that of my beloved husband, the late Dr. John B. Reinholdt, be permanently placed in the said mausoleum, the body of my said husband to be removed from Greenwood Cemetery.

"Fourth: I direct Three hundred Dollars of my estate be set apart as a permanent trust fund for the perpetual care, maintenance, and repair of the lot and mausoleum mentioned and provided for in item Third of this Will: the interest alone of said trust fund to be used for that purpose so that the principal shall remain indiminished; and my executors hereinafter named are hereby made trustees for that purpose. And if the said trust shall become vacant at any time, by reason of the death, resignation, or removal of both of said trustees, a trustee for the management of the said trust fund shall be appointed by the Orphan's Court of Lawrence County (Pennsylvania) and the trustee so appointed by Court shall be required to give bond with security to be approved by said Court.

"Fifth: I hereby charge my house and lot 7720 Juniata Street, East End in the City of Pittsburgh, Pennsylvania, with the sum of Eleven Hundred and fifty Dollars, to be raised from the net rents from said house and lot by my executors, which sum shall be applied to the payment of my debts, and all other items of cost, charge, expense and trust fund mentioned in the First, Second, Third and Fourth items or clauses in this will. And in addition to the said sum of Eleven hundred and fifty Dollars the balance that may be required for said purposes, mentioned in the First, Second, Third and Fourth items of said will, and the costs and expenses of administration shall be paid out of any money I may have on hand, in bank, and out of any securities or evidences of indebtedness of any kind I may have, after being converted into cash for that purpose; and if the aggregate amount of money on

hand and that raised as above mentioned be insufficient for all of said purposes, then the balance that may be necessary for said purposes shall be raised out of the net rents of all of my real estate, and my executors are hereby directed in such event to rent all of my real estate and apply the net rents (after payment of taxes, insurance, repairs, commissions, etc.) to the purposes above mentioned."

The mausoleum provided for by Mrs. Reinholdt's will has never been built. She had three pieces of real estate, one in Allegheny County and two in Lawrence County. There was no personal property to devote to the building of the mausoleum and there have been since 1912 no accumulations of rents. In the meantime many of the people whom she desired to be buried with her in the mausoleum have died and been buried elsewhere, rejecting the idea of interment therein. The cost of the mausoleum at present prices would be almost as much as the value of all the real estate.

Plaintiff obtained the Allegheny County property under the will of her mother, Mary Luella J. Reed, who died November 13, 1946. Plaintiff claims to hold the Allegheny County real estate free from any charge for building the mausoleum and by necessary inference claims that all the real estate is free from this charge. This claim is resisted by defendant, who is administrator d. b. n. c. t. a. in the estate of Mrs. Reinholdt. He has gone so far as to present a petition for sale of the Allegheny County property to pay the lien. The refusal of the Orphans' Court of Allegheny County, whose opinions have long been valued throughout the Commonwealth, to authorize such a sale has caused the bringing of this present action.

Testatrix's plan, in brief, was to build up a fund for the construction of a mausoleum out of the rents of the Allegheny County property supplemented, if neces-

sary, by some of her personal property. If both these funds proved insufficient the rents from all the real estate were to be accumulated to build the mausoleum. Nowhere was there any gift of the corpus of the real estate. The chief and indispensable fund for the building was accumulated rents.

Here testatrix's scheme collides with a major principle of public policy in this Commonwealth, the rule against accumulations. Related to the rule against perpetuities it is nevertheless different. The rule forbids all accumulations of income except during minority of a beneficiary or for a charitable purpose: Act of April 18, 1853, P. L. 503, sec. 9, 20 PS §3251.

The question at once arises: Are accumulations for a mausoleum accumulations for a charitable purpose? The establishment of trusts for purposes connected with burial and cemeteries has been the subject of legislation. The Act of May 26, 1891, P. L. 119, 9 PS §4 (now repealed by the Estates Act of April 24, 1947, P. L. 100, sec. 20, but in force at the time of decedent's death) provided:

"No disposition of property hereafter made for the maintenance or care of any cemetery, churchyard or other place for the burial of the dead, or of any portion thereof, or grave therein, or monuments or other erections on or about the same, shall fail by reason of such disposition having been made in perpetuity, but said disposition shall be held to be made for a charitable use."

Trusts for cemeteries, monuments and the like are sometimes spoken of as "honorary trusts" because there is no living beneficiary and hence no one who may in his own right ask for enforcement of the trust: Devereux's Estate, 48 D. & C. 491, 499. Obviously, also, a cemetery trust looks toward a long future. The statute, recognizing this, allows testator to provide for his burial place for any length of time, however remote.

According to the general weight of authority trusts for graves, monuments and the like are not charitable trusts: 10 Am. Jur. 637; 2 Bogart on Trusts 377; 2 A. L. I. Restatement of the Law of Trusts 374(h). Our legislature has made them charitable trusts but only so far as the rule against perpetuities is concerned: Wise et al. v. Rupp, 269 Pa. 505, 508.

The cases approving and applying the Act of 1891 must be kept in mind. In Bainbridge's Appeal, 97 Pa. 482, testator devoted the entire residue of his estate to build a monument. In Smith's Estate, Walker's Appeal, 181 Pa. 109, a gift for the erection of a memorial arch in a public park and its perpetual maintenance was sustained. The limits to this kind which may be put in trust appear in Palethorp's Estate, Provident Life & Trust Co.'s Appeal, 249 Pa. 389, where a trust of $150,000 to endow a family burial lot and to support a "proper person to attend to the care of the lot and show people where it is" was held void except so far as the reasonable care of the lot was concerned.

The feature of the case at bar which distinguishes it from all others is the necessity for accumulating income before anything may be built or cared for. The Act of 1891 provides for "maintenance or care", not for construction. There is, as noted before, a difference between the rule against perpetuities and the rule against accumulations. The piling up of income after death is regarded as an evil. Of course accumulation beyond the period of the rule against perpetuities is bad; accumulation within that period may also be bad unless it is for the benefit of a minor or charity. The legislature in the Act of 1891 made trusts for burial places charities so far as the rule against perpetuities is concerned but did not in any way authorize accumulations: Wise et al. v. Rupp, supra.

Since the Act of 1891 deals only with maintenance, whereas the case at bar deals primarily with construction; and since the act goes only so far as to allow a gift in perpetuity, saying nothing about accumulations, while the will at bar requires accumulations, it follows that the act has no application and Mrs. Reinholdt's plan falls under the condemnation of the Act of 1855 against accumulations.

In this view of the case it is unnecessary for us to consider whether and to what extent her provision for a mausoleum was excessive and whether it should now be built at all when no one wants to be buried in it. Roger's Estate, 179 Pa. 602, cited by defendant, is not in point. There accumulation was directed for minors and the disposition was void only as to the excess, according to accepted rules: Sharps' Estate, Myers' Appeal, 155 Pa. 289. Nor does Williamson's Estate, 143 Pa. 150, help us. There the accumulations were directed only for one year after the death and the disbursements during that year were greater than the receipts.

Jurisdiction under the Uniform Declaratory Judgments Act as supplemented by the Act of May 22, 1935, P. L. 228, 12 PS §831, et seq., is clear. A sale 'of one parcel of land is held up because the administrator insists that provision for the mausoleum must be made by the owner of the real estate. The express charge created by the will is pointed out. Defendant went so far on his side as to institute a proceeding to sell the land to clear the lien of the charge imposed upon it. A decree establishing a clearing of this lien will settle the controversy.

Our conclusion is that the court has jurisdiction and that the directed accumulation of rents for the purpose of building a mausoleum is void because contrary to the statute against accumulations.