# Bainbridge's Appeal.

A testator directed his executor to sell all his property and to pay the interest thereof to his mother during her life; after her death he bequeathed certain legacies, and all the residue of his property he directed his executor, " to appropriate and use for and in the erection and construction of a suitable monument at my grave, such as the amount of funds in his hands will warrant." *Held*, that testator's mother having died and his legacies being paid, his executor had a right to apply all or any part of the testator's estate remaining in his hands which he saw proper, to the erection of a monument at the grave.

March 24th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Appeal from the Orphans' Court of *Montgomery county :* Of January Term 1881. No. 235.

This was an appeal by Henry Bainbridge from the decree of the said court making distribution of the estate of William M. Bainbridge, deceased. The facts of the case were as follows : William M. Bainbridge, an unmarried man, died at his residence, in Norristown, Montgomery county, June 11th 1869, leaving to survive

[Bainbridge's Appeal.]

him three brothers (of whom the appellant is one) and three sisters, having made his last will, dated June 1st 1869, wherein he directed that all his estate, real and personal, should be sold by his executor, the interest of the proceeds to be paid half yearly to his mother during her life, and after her death he directed as follows, viz. :

"I. give and bequeath to Norristown Encampment, No. 37, of the Independent Order of Odd Fellows, the sum of One Hundred Dollars.

"I give and bequeath to Curtis Lodge, No. 239, of the Independent Order of Odd Fellows, the sum of One Hundred Dollars.

"I give and bequeath to my nephew, William Tustin, the sum of Twenty-five dollars.

"I give and bequeath to my nephew, William Fulmer, the sum of Twenty-five Dollars.

"And all the rest, residue and remainder of my estate, after the decease of my said mother, and the payment of said bequests, I direct my said executor to appropriate and use for and in the erection and construction of a suitable monument at my grave, such as the amount of funds in his hands will warrant.

"I wish and desire to be buried in Montgomery Cemetery, and that Curtis Lodge, of the Independent Order of Odd Fellows, shall have the charge and management of my funeral, and have my remains interred in their burial lot, or in some burial lot, to be purchased near thereto.

"I hereby nominate, constitute and appoint my friend, George W. Calhoun, of Norristown, to be executor of this, my last will and testament.

"In witness whereof," &c.

The testator's mother died in April 1880, and shortly afterwards the testator's executor filed his account, showing a balance for distribution of $1118.43. The only disputed question before the auditor, to whom the account was referred, was as to the distribution of the residue of the testator's estate after payment of the pecuniary legacies. The auditor reported on this question as follows :

"In the opinion of the auditor that portion of the will before cited ought to be construed to mean that a reasonable sum of the balance of the estate ought to be appropriated in the erection and construction of a monument over the grave of the testator, and not the entire estate. If the intention of the testator had been that the *entire* estate should be appropriated in the erection of a monument, he would not have added the words "such as the amount of funds in his hands will warrant." It being the opinion of the auditor that only a reasonable amount of the estate should be appropriated to the erection of a monument, the question arises, what is the proper amount that ought to be expended in the erec-

[Bainbridge's Appeal.]

tion of a monument?   After a careful examination of the evidence on that point, and which is hereunto annexed, your auditor is of the opinion that the sum of three hundred dollars is a suitable amount, such as is warranted by the amount of the funds in the hands of the executor."

The auditor awarded the remainder of the estate to the testator's brothers and sisters in equal shares of $84.57.

Exceptions to the auditor's report were filed by both the heirs and the executor, upon the argument of which a draft of a monument as proposed by the executor, the cost of which was estimated at $715, was submitted to the court and attached to the report. The court, in an opinion by Ross, P. J., held that the only limitation upon the cost of such a monument as the executor deemed to be suitable, was the amount of funds remaining in his hands; and entered a decree awarding the sum of $715 to the executor for the erection of such a monument; and the court distributed the surplus remaining ($92.42) among the testator's brothers and sisters in equal shares of $15.40.

Henry Bainbridge, one of the brothers of the testator, took this appeal, assigning for error the interpretation by the court of the will of the testator, and the decree of $715 to the executor for monumental purposes.

*George W. Rogers*, for the appellant.—The selection of a monument was not left by the testator in the unrestrained discretion of the executor, but was limited to such as should be "suitable," and "such as the amount of funds in his hands will warrant." A chancellor will control a trustee so that he shall not disregard the intent of the donor as gathered from the instrument containing the power: Williams's Appeal, 23 P. F. Smith 249. The decedent was an humble mechanic, and directed a suitable monument, that is, suitable to his condition in life. The whole residue of his estate was not to be expended, or he would not have used the further limiting words "such as the amount of funds in his hands will warrant." The auditor allowed $300, and the court below also thought that adequate, but felt constrained, by their mistaken interpretation of the will, to permit the whole or any part of the residue to be used, in the discretion of the executor. The law does not favor the squandering of an estate in ostentatious funeral or monumental displays at the expense of the next of kin: Barklay's Estate, 33 Leg. Int. 108; McKinny's Estate, 1 Leg. Gaz. Rep. 12; Flintham's Appeal, 11 S. & R. 16; McGlinsey's Appeal, 14 Id. 64; Bradley's Estate, 32 Leg. Int. 257.

*Theodore W. Bean*, for the appellee.—The testator appropriated "all the rest, residue and remainder of his estate" for the erection

[Bainbridge's Appeal.]

of a suitable monument, such as the amount of funds in his executor's hands would warrant. There was no bequest over. He had devoted the income from his entire estate to the support of his mother during her life, and had made pecuniary bequests to relations and lodges of Odd Fellows. It was his right to do as he pleased with his own, and if the court below had sustained the exceptions of the appellees, it would have made a new will instead of enforcing that which the testator saw fit to make.

Mr. Justice MERCUR delivered the opinion of the court May 2d 1881.

This contention arises under the will of one who died unmarried and without issue. He appears to have thought he had a right to make such a disposition of his estate as he saw proper, provided he did not violate any principle of public policy, religion, or morality, nor infringe on any statute. Whether he knew Blackstone had defined a will to be "the legal declaration of a man's intention which he wills to be performed after his death" we are not informed. Nevertheless he did execute a last will and testament, in due form of law. After the payment of his debts and funeral expenses, he directed that all his estate be converted into money, and invested in good first mortgage security, the interest thereof to be paid half yearly to his mother during her natural life. After her death he bequeathed one hundred dollars to Norristown Encampment No. 37 of the Independent Order of Odd Fellows, and a like sum to Curtis Lodge No. 239 of the same order. Also the sum of twenty-five dollars to each of two of his nephews named. Then "all the rest, residue, and remainder of my estate, after the decease of my said mother, and the payment of said bequests, I direct my said executor to appropriate and use for and in the erection and construction of a suitable monument at my grave, such as the amount of funds in his hands will warrant."

In the exercise of this power, the executor selected a monument which cost seven hundred and fifteen dollars, being about ninety dollars less than the residuary estate. The court sustained him in so doing. This presents the ground of complaint. It is contended the language of the will does not justify the expenditure of so large a sum. It is claimed to be more than "the amount of funds in his hands will warrant. This is an attempt to give undue weight to that clause and make it paramount to the previous clause appropriating the whole fund. It should be construed in connection with, and subordinate to, the former clause. He had therein directed his executor to appropriate and use "all the rest, residue and remainder" of his estate for the purpose named. The whole fund was "in his hands" for that purpose. The last clause was not intended to take from him the right to so use the whole fund. The word "suitable" manifestly related to the form and style of

[Bainbridge's Appeal.]

the monument, which was left to the discretion of the executor, with the cautionary direction to have due regard to the amount of the funds. There is absolutely nothing indicating he may not use the whole fund. There is no devise over of any part thereof. The reason therefor evidently is that he expected all of it would be expended for the specific purpose named. Why then shall not due effect be given to an intention so clearly expressed? May not the testator have said to the appellant as the good man of the house said to the laborer, "is it not lawful for me to do what I will with mine own?"

We will not consider the wisdom or the folly of this disposition. He had a right to make it. He did make it, according to the forms of law. He gave the fund and clearly expressed his intention as to its use. We see no cause to set at naught his will or to impair its force. The executor made his election under it. The court confirmed his action. The appellant has no just ground of complaint.

> Decree affirmed, and appeal dismissed, at the costs of the appellant.

SHARSWOOD, C. J., dissented.