[No. 15346.   Department Two. — December 30, 1893.]

IN THE MATTER OF THE ESTATE OF CHARLES LUX, DECEASED.

ESTATES OF DECEDENTS—FAMILY ALLOWANCE—CONSTRUCTION OF ORDER.
An order granting a family allowance, made prior to the return of the inventory of the estate, giving the widow of the decedent a monthly allowance "until said inventory is returned, or until the further order of this court," when construed in connection with sections 1464 and 1466 of the Code of Civil Procedure, means that the allowance thereby given shall terminate upon the return of the inventory, or before that time if the court shall so order, and the allowance does not continue beyond the date of the return of the inventory.

C. CAL.—38

Id.—RETURN OF INVENTORY.—An inventory of an estate is returned within the meaning of the law when it has been completed by the appraisers and presented to the court or judge for information and as a basis for some judicial action to be taken in the proceeding for the settlement of the estate to which it relates.

Id.—FILING OF INVENTORY.—Though the filing of an inventory with the clerk would constitute its return, such filing is not an indispensable step which must be taken to constitute the return.

Id.—PRESENTATION TO JUDGE AT RESIDENCE—ORDER COMPENSATING APPRAISERS.—The fact that an inventory of an estate is presented to the judge of the court at his residence, and an order fixing the compensation of the appraisers is there signed, does not affect the sufficiency of the return of the inventory, the order being one that the judge had a right to make at chambers.

Id.—JUDGE'S CHAMBERS COEXTENSIVE WITH JURISDICTION OF COURT.—A judge's chambers are not confined to the place for the usual transaction of judicial business not required to be done in open court, but chamber business may be done wherever the judge may be found within the proper jurisdiction of the court.

Id.—COMPLETION OF INVENTORY—AFFIDAVIT.—An inventory of an estate is completed when the work of the appraisers has been concluded and the instrument showing the result of their labors has been signed and delivered by them. The affidavit by the executor or administrator required by section 1449 of the Code of Civil Procedure to be annexed to the inventory is not essential to give it a legal existence.

Id.—FAMILY ALLOWANCE—MANDATORY STATUTE—FINANCIAL ABILITY OF WIDOW IMMATERIAL.—Section 1466 of the Code of Civil Procedure, which declares that if the property set apart for the use of the widow and minor children of a decedent is insufficient for their support, the court must make a reasonable allowance out of the estate, is mandatory, and requires the court to make such an allowance as shall be necessary for the support of the family during the settlement of the estate, regardless of the widow's financial ability to support herself without aid from the estate.

Id.—DISCRETION OF PROBATE COURT.—The amount to be granted to a widow of a decedent for the support of herself and minor children is within the discretion of the probate court, and its action in making the allowance will not be disturbed upon appeal unless an abuse of discretion is clearly shown.

Id.—EXTENT OF ALLOWANCE.—The probate court, in fixing the amount of a family allowance, is not restricted to a bare support of the widow, but regard should be had to the mode in which she had lived during the lifetime of her husband. The allowance should be sufficient to provide all the necessaries of life, which includes all that is reasonable and proper for use in the home and in social intercourse, in view of the condition and value of the estate and the station and surroundings of the family.

APPEAL from an order of the Superior Court of San Mateo County granting a family allowance.

The facts are stated in the opinion of the court.

*Garber, Boalt & Bishop,* for Appellant.

The order appealed from is erroneous because the finding that the inventory was returned on August 30, 1888, is contrary to the evidence, as the inventory was not and could not be returned on that day because it had not been verified. (Code Civ. Proc., secs. 1443, 1449. See 2 Woerner on Am. Law of Administration, pp. 661–67, and notes; Dalton on Sheriffs, 162; Gwynne on Sheriffs, 452; Crocker on Sheriffs, secs. 28, 39.) The order fixing the compsensation of the appraisers had nothing to do with the return of the inventory, and raises no inference of its return. (Code Civ. Proc., sec. 1444.) Nor did the presentation of the inventory to the judge out of court constitute a return of the inventory, as the return is required to be made to the court and not to the judge. (Code Civ. Proc., sec. 1443.) The decision is against law even if the inventory should be deemed returned August 30th, because its return did not terminate the first order of allowance. The clause of the statute "until the inventory is returned," does not make the return of the inventory itself a discontinuance of the allowance. (See *Montgomery's Estate,* 60 Cal. 648, 650; Code Civ. Proc., sec. 1466.) The order of the words of section 1464 shows, beyond doubt, that the clause "until the inventory is returned" does not apply to the continuance but to the making of the allowance. Adverbs and adverbial clauses should be placed as near as possible to the words which they are intended to qualify. (Brown's Grammar of Grammars, p. 1064, sec. 4, precept 1; Hill's Rhetoric, p. 135; Hart's Composition and Rhetoric, pp. 104, 106.) The statute should be liberally construed. (1 Woerner on Am. Law of Administration, sec. 80; Thompson on Homesteads, sec. 936; *Kapp* v. *Public Administrator,* 2 Bradf. 258, 260; *Boyer* v. *Boyer,* 21 Ill. App. 534, 537; *Strawn* v. *Strawn,* 53 Ill. 263, 274; *Cheney* v. *Cheney,* 73 Ga. 66, 71; *Sawyer* v. *Sawyer,* 28 Vt. 245.) The order appealed from is erroneous because the prior order remained in force after

August 30, 1888, and because the second allowance was not continued. The court had no power to make a new order reducing the first allowance during a period covered by the previous order. (*Ford* v. *Ford*, 80 Wis. 565; *Baker* v. *Baker*, 51 Wis. 538, 548; 1 Woerner on Am. Law of Administration, secs. 79, 93; *Sawyer* v. *Sawger*, 28 Vt. 245, 247, 248.) The order granting the allowance is erroneous as the amount allowed is inadequate for the widow's support. The mode of living to which a husband accustomed his wife in his lifetime, and his views on that subject, are proper facts to be considered, and should have great weight with the court in fixing the amount of the statutory allowance to be made to his widow or family after his death. (*In re Stevens,* 83 Cal. 322, 326; 17 Am. St. Rep. 252; *Cheney* v. *Cheney*, 73 Ga. 66, 70, 71; 1 Woerner on Am. Law of Administration, sec. 79, p. 165.) The fact that the widow had property and an income independently of the will should not have been taken into consideration by the court in making the allowance. The statute authorizing the allowance is mandatory. (Code Civ. Proc., secs. 1464, 1466; *Sawyer* v. *Sawyer*, 28 Vt. 245, 248; 1 Woerner on Am. Law of Administration, sec. 87.

*J. H. Campbell*, and *D. M. Delmas*, for Respondents.

The second petition for an allowance should have been denied, as the widow had abundant means of her own. The object of a "family allowance" is to protect the family from actual want and necessity, and the allowance should be refused where the widow has sufficient separate property of her own. (Schouler on Executors, sec. 449; Thompson on Homesteads, secs. 932, 967; 1 Woerner on Am. Law of Administration, secs. 77 et seq.; *Estate of Luther*, 67 Cal. 319; *Estate of Walkerly*, 77 Cal. 642; *Barnum* v. *Boughton*, 55 Conn. 117; *Woodbury* v. *Woodbury*, 58 N. H. 44; *Foster* v. *Foster*, 36 N. H. 437; *Sloan* v. *Webb*, 20 Tex. 189; *Hollenbeck* v. *Pixley*, 3 Gray, 525; *Adams* v. *Adams*, 10 Met. 170; *Appeal of Walker*, 83 Me. 17; *Pulling* v. *Durfee*, 88 Mich. 387.) The first

allowance ended upon the returning of the inventory, and the court could not extend it beyond that time. (Code Civ. Proc., sec. 1464; *Smith* v. *Westerfield*, 88 Cal. 374; *Estate of Hamilton*, 66 Cal. 576.)

De Haven, J.—This is an appeal by Miranda W. Lux, widow of Charles Lux, deceased, from an order of the superior court made May 13 and filed May 17, 1892, allowing her the sum of one thousand dollars per month, as an allowance for her support, from August 30, 1888, to November 16, 1891.

Charles Lux died testate in March, 1887, leaving an estate of the value of four million dollars or more, of which ninety per cent was the partnership interest of the deceased in the firm of Miller & Lux. The indebtedness of the estate appears to be about four thousand dollars. Under the partnership agreement, as well also as by the terms of the will, the surviving partner was given seven years after the death of the other within which to settle the business of Miller & Lux.

The order appealed from is the second order for family allowance. The first was made May 4, 1887, prior to the return of the inventory of the estate, and allowed the widow two thousand five hundred dollars per month from the date of the decedent's death "until said inventory is returned, or until the further order of this court"; and it appears that this allowance was actually received by her up to the 16th of November, 1891, the date when, under the terms of the order now under review, the family allowance ceased.

The order setting apart to the widow the exempt property to which she was entitled by section 1465 of the Code of Civil Procedure was not made until March, 1892.

The court below found that the inventory of the estate was returned on August 30, 1888, but it also appears that the same was not filed until May 16, 1890.

It is claimed by the appellant that the first order in relation to the family allowance remained in force ac-

cording to its terms until the date of the order appealed from; and that if it did not, but is to be construed as terminating upon the return of the inventory, that the date when the inventory was filed, or when the executors attached thereto their affidavits, as required by section 1449 of the Code of Civil Procedure, is the time of its return; and the finding of the court that it was returned prior thereto, upon August 30, 1888, is against the evidence, and that under either construction the order appealed from is erroneous: 1. Because it is retroactive, and attempts to deprive her of a portion of the allowance to which she was entitled under the first order, and which had actually been paid to her in obedience to its directions before the last order was made; and 2. Because it does not provide for a family allowance during the entire period of the settlement of the estate; and lastly, that the allowance of one thousand dollars a month is not sufficiently large, and is not a reasonable one in view of the value and condition of the estate.

1. The order of May 4, 1887, as already stated, made a family allowance to the widow of two thousand five hundred dollars per month "from the date of the death of the deceased until said inventory is returned, or until the further order of this court." The words "or until the further order of this court" were not intended to continue the allowance beyond the date of the return of the inventory, and until some further order of the court in the matter, as argued by appellant, but the true construction of the order is that the allowance thereby given shall terminate upon the return of the inventory, or before that time, if the court shall so order; the order simply refers to two events, upon the happening of either one of which the allowance is to cease. This is not only the natural construction of its language but makes the order itself in harmony with section 1464 of the Code of Civil Procedure. That section is as follows:

"1464. When a person dies, leaving a widow or minor children, the widow or children, until letters are granted

and the inventory is returned, are entitled to remain in possession of the homestead . . . . and are also entitled to a reasonable provision for their support, to be allowed by the superior court or a judge thereof."

The order referred to in this section may be made at once, upon the filing of the petition for letters, and when the court is without the definite information concerning the value of the estate which is afforded by the inventory and appraisement; and that the allowance here provided for is intended to be in the nature of a preliminary or temporary allowance, not extending beyond the return of the inventory, becomes clear when this section is read in connection with section 1466, following, which imposes upon the court the duty to make a further allowance after the return of the inventory, if the property set apart to the family is insufficient for their support, and which allowance is to be of a more permanent character, and to continue during the administration of the estate, unless the estate is insolvent, in which case it is not to continue longer than one year.

2. The order appealed from was made May 13, 1892. It is entirely retroactive, and gives to the widow one thousand dollars per month, commencing August 30, 1888, the date of the return of the inventory, as found by the court, and ending November 15, 1891. The appellant claims that this order covers a portion of the time when the order of May 4, 1887, was in force, and is erroneous because it reduces the family allowance during such period, and attempts to deprive her of a part of the allowance to which she was entitled by that order. The decision of the question thus presented depends entirely upon the fact as to when the inventory was returned. If the finding of the court below as to the date of its return is sustained by the evidence, then the order under review is not open to the objection that it interferes with any rights which vested in appellant by virtue of the prior order of May 4, 1887. It appears from the record that the inventory and

appraisement was actually completed by the appraisers, and signed and delivered by them to the executors of the estate on August 20, 1888, and it was presented by the attorney for the executors to the judge of the superior court at his residence, on August 30, 1888, for the purpose of procuring an order fixing the compensation of the appraisers, and on that day an order was made, fixing such compensation and directing its payment, the order reciting that it appeared to the court that the appraisers had completed the work of appraising the estate. At the time the inventory was so presented to the judge, the executors had not attached thereto their affidavits, as required by section 1449 of the Code of Civil Procedure, and did not fully comply with the law in this respect until February, 1890; and the inventory was not actually filed with the clerk until May 16, 1890. On the day when the inventory was presented to the judge for the purpose of procuring the order fixing the compensation of the appraisers, it was verbally agreed between the attorney for the executors and the attorney for certain devisees named in the will, that the inventory need not be in fact filed, and that it might be retained in the custody of the attorney for the executors, but should be treated for all purposes as filed on that day.

The will of the deceased provides that no inventory of the estate shall be filed, and the attorneys, doubtless, proceeded upon the assumption that they could properly so far comply with this direction as not to place the inventory on file for public inspection. We have alluded to this verbal stipulation, not because we think it affects the question we are now discussing, but simply as a matter established by the evidence. Assuming the foregoing facts to be true, when was the inventory returned? The filing of an inventory with the clerk of the proper court would certainly constitute its return, but, while this is so, we do not think such filing an indispensable step which must be taken in order to effect the return of such a paper. An inventory is returned within the meaning

of the law when it has been completed by the appraisers, and presented to the court or judge for information, and as a basis for some judicial action to be taken in the proceeding for the settlement of the estate to which it relates; and, if the inventory was completed so as to have a legal existence when it was presented to the judge of the superior court on August 30, 1888, such presentation was sufficient to constitute its return. The order was one which the judge had a right to make at chambers, and he could properly receive and act upon the inventory there. (Code Civ. Proc., sec. 166.) A judge's chambers are not confined to some particular room in the courthouse, or other place for the usual transaction of judicial business not required to be done in open court. (*Von Schmidt* v. *Widber*, 99 Cal. 511.)

"Chamber business may be done, and often is done, on the street, in the judge's own house, at the hotel where he stops when absent from home, or it may be done *in transitu* on the cars, in going from one place to another within the proper jurisdiction of the court. (*In re Neagle*, 14 Saw. 265.)"

But it is further contended by appellant upon this point that the inventory was not completed when presented to the judge of the superior court on August 30, 1888, nor until the executors attached thereto their affidavits, as required by law. Section 1449 of the Code of Civil Procedure does make it the duty of the executor or administrator to indorse upon or annex to the inventory, after it is completed by the appraisers, an affidavit to the general effect that the inventory contains a true statement of all the property of the decedent of which he has any knowledge, and of all claims which the decedent had against him, but in our opinion this affidavit is not necessary to give a legal existence to the inventory itself. An inventory may be said to be completed when the work of the appraisers has been concluded, and the instrument showing the result of their labors has been signed and delivered by them. The purpose of the statute in requiring the affidavit men-

tioned in section 1449 of the Code of Civil Procedure is to furnish an additional assurance that the inventory contains a full statement of all the property of the estate known to the executor or administrator, and also to obtain his solemn admission that he is properly chargeable in his accounts with all the property that is described in the inventory; and the court may, upon its own motion, or upon the application of any person interested in the estate, compel the executor or administrator to comply with this section; but the failure of the executor or administrator to discharge this duty would not render the inventory, properly signed and delivered by the appraisers, of no effect as an inventory.

Our conclusion is that the finding of the court that the inventory was returned on August 30, 1888, is sustained by the evidence, and that the order appealed from is, therefore, not in conflict with the previous order of May 4, 1887, and does not deprive the appellant of any rights vested in her by that order.

3. The order appealed from in effect was a denial of the petition of the widow for an allowance for her support during the progress of the settlement of the estate. The order was retroactive, and the allowance therein given ceased on November 15, 1891, more than six months prior to its date. Did the court err in refusing to continue the allowance after that date, and until the distribution of the estate in whole or in part? Section 1466 of the Code of Civil Procedure provides that, if the property set apart for the use of the widow and minor children "be insufficient for the support of the widow and children, or either, the court . . . . must make such reasonable allowance out of the estate as shall be necessary for the maintenance of the family according to their circumstances during the progress of the settlement of the estate, which in case of an insolvent estate must not be longer than one year after granting letters testamentary, or of administration." The court below found that the property set apart to the widow is insufficient for her support, and also made

additional findings to the effect that the deceased in his will bequeathed to her a legacy of five hundred dollars per month during her life, and a life estate in certain property from the rents and sale of her interest in which she had received one hundred and thirty-seven thousand dollars, and that the deceased also provided in his will as well as by agreement with his partner, Miller, that said Miller should pay to her monthly such sum as might be needed for her support.

It is claimed by respondents that these findings show that the widow has sufficient property of her own to support herself, and that under such circumstances she was not entitled to any allowance whatever from the estate, and, therefore, she cannot be heard to complain because the order appealed from does not continue the allowance during the administration of the estate; and in support of this proposition it is argued that the object of the statute is "to meet the actual wants and necessities of the widow and her family," and that when as in this case, the widow is childless and has abundant private means of her own, there are no wants or necessities to relieve, and the law does not contemplate that any allowance shall be made for her support. But, however the rule may be in other states, and there are decisions which seem to support this contention of respondents, we do not think section 1466 of the Code of Civil Procedure can be so construed. Its language is express and mandatory, and in the language of the counsel for the appellant, "the duty of maintaining the family, which the law imposed upon the deceased husband or father in his lifetime, is continued against his estate pending its administration," if the estate is insolvent. It declares that the court must make a reasonable allowance out of the estate if the property set apart to the family is insufficient for their support, and for the court to hold that no allowance shall be made to the widow if she has sufficient property of her own, although the property set apart to her is insufficient of itself for her support, would be, in effect, an amendment of the law

by judicial construction. There was nothing actually decided in the *Estate of Walkerly*, 77 Cal. 643, in conflict with this conclusion, although it may be conceded that there are expressions in the opinion which, considered apart from the facts before the court, lend some support to the argument of respondents on this point.

Of course we are not to be understood as holding that the value of the property set apart for the use of the family, under section 1465 of the Code of Civil Procedure, or the income of such property is not to be considered in determining what is a reasonable allowance to be made from the remaining portion of the estate for the support of the family, during the progress of the settlement of the estate; nor that such order for family support, when made, may not be subsequently modified by the court if the condition of the estate or the relation of the family thereto should change; as if, for instance, it should appear that the value of the estate was materially less than shown at the date of the order sought to be modified, or that its indebtedness is greater than was then supposed, or in the event of a partial distribution to the widow or children before the final distribution of the estate.

The law of Vermont in regard to the family allowance is substantially the same as that of this state, and in *Sawyer* v. *Sawyer*, 28 Vt. 245, the supreme court of that state held that the widow's financial ability to support herself without aid from the estate was immaterial in considering the question of her right to a family allowance. In that case it was urged that the widow was not entitled to such allowance because she was in receipt of a pension, and was living with her father who was wealthy, and who made no charge against her for her support. In answer to this argument the court in that case, in an opinion delivered by Redfield, C. J., said: "The exceptions claimed in the present case are, first on the ground of the pension which the widow obtained as such upon the decease of her husband. This is no difference in principle from her being possessed of ability

to maintain herself in any other mode so as not to require assistance from the estate, and indeed the general ability of the appellee or the widow in this case, from her living with her father, and the wealth of the family and the very great improbability of his making any personal claim against his daughter for her board, was also alluded to in the argument and is stated in the case, and seems to us to come fairly under consideration in the same connection; but we are not prepared to say that any such exception can fairly be ingrafted upon the statute. If it had been the purpose of the legislature to allow maintenance only in case of such widow and children as were without the means of subsistence in any other mode, it is difficult to conjecture how it occurred that the provision should have been expressed in the general and unlimited manner it here is. It is incomprehensible that, if the provision were intended only for the indigent and necessitous, it should have been made general." This decision of a learned court upon a statute similar to section 1466 of the Code of Civil Procedure is entitled to great weight, and we adopt it as expressing our own views of the proper construction to be given that section.

4. In view of the conclusion reached upon the preceding point, it is unnecessary for us to express any opinion upon the question of the reasonableness of the amount allowed by the court for the period covered by its order. The amount of the allowance is a question which rests very largely in the discretion of the superior court, and its action in the matter will not be disturbed on appeal unless it clearly appears that the discretion has been improperly exercised. Of course, as was said In re Stevens, 83 Cal. 325; 17 Am. St. Rep. 252: "The court is not restricted, in making this allowance, to a bare support of the widow. Regard should be had . . . . to the mode in which she lived during the lifetime of her husband." The allowance is to be sufficient to provide all the necessaries of life, and this will include all those things which are reasonable and proper for use in

the home and in social intercourse, in view of the condition and value of the estate and the station and surroundings of the family.

The order appealed from will be reversed, and the superior court will, upon the evidence already before it, and such further evidence as the parties may desire to present, make an order for an allowance to the widow, to continue during the progress of the settlement of the estate, and in such amount as it shall deem reasonable, and without regard to the fact that she may have separate property sufficient for her support.

Order reversed.

FITZGERALD, J., and McFARLAND, J., concurred.

Hearing in Bank denied.