ESTATE OF WILLIAM HESSLER, DECEASED.

[No. 15,219; decided January 19, 1895.]

Homestead—Setting Apart from Community Property.—The requirement of Code of Civil Procedure, section 1465, that a homestead be set apart for the use of the surviving husband or wife and the minor children out of the common property, is mandatory, and if there is suitable property in the estate for the purpose it must be set aside.

Homestead—Setting Apart from Community Property Absolutely.— If a homestead is selected from the common property, it cannot be set apart for a limited period only. It is of no consequence that the widow is old and will not require the homestead for many years, or that she will receive three-fourths of the estate upon distribution. It is plainly the duty of the court, under the statute, to award a homestead to her, and it is then taken out of the estate and becomes her property, with absolute power of disposition.

Homestead.—There is No Limitation as to the Value of property set aside as a probate homestead.

Homestead.—Where there are No Children, the widow constitutes the family of the decedent.

Family Allowance.—In Determining What is a Reasonable Allowance for the maintenance of the family of a decedent, regard should be had to the condition of the estate and the mode in which the family had lived during the lifetime of the deceased.

Family Allowance.—The Right to an Allowance Commences from the Death of the decedent.

Funeral Expenses—Extent of Expenditures Therefor.—While suitable respect should be shown to the deceased in the matter of a burial place and monument, and while the court in its discretion can make allowance out of the estate therefor, yet large expenditures in this way represent the sentiments of the persons that incur them, rather than the necessary expenditure of trust funds, and courts should be cautious in allowing expenditures of this character.

Funeral Expenses.—The Cost of a Monument is a part of the funeral expenses, and a reasonable amount for this purpose may be allowed.

William Hessler died on September 22, 1894, and on October 18, 1894, Catherine Hessler, his widow, was appointed administratrix of his estate. An inventory was filed on October 17, 1894, and on November 20, 1894, the widow filed the petitions mentioned in the opinion; subsequently the absent heirs filed objections to the granting of these petitions.

Frank J. Sullivan, for petitioner.

W. H. Barrows, for absent heirs.

COFFEY, J. The widow of Wm. Hessler, deceased, presents three petitions in this matter:

First, that certain land described in her petition, with the dwelling-house thereon and appurtenances, be set apart to her as a homestead.

Second, that an allowance of $500 per month be made to her out of said estate for her support pending the administration.

Third, that she be authorized to erect a monument at a cost to the estate of $5,000, and be reimbursed for money already expended by her in the purchase of a burial lot for said deceased in the sum of $280 more.

The heirs of said deceased other than said widow have interposed objections to the granting of each and all of these petitions.

At the outset it is conceded that each of these matters rests largely in the discretion of the court, but in the exercise of that discretion due consideration should be given to the following facts and circumstances:

1. That the property sought to be set apart as a homestead is worth at least $8,000, and that in addition thereto the widow will receive all of the household furniture in said house, which is appraised at $250;

2. That the value of the entire estate as shown by the inventory is $76,953.16, and the entire income thereof is about $300 per month;

3. That the widow is advanced in years and has no one dependent upon her, there being no children;

4. That under the law the widow will receive three-fourths of the estate upon distribution.

This application for a homestead is made under section 1465 of the Code of Civil Procedure, which provides that the court must select and set apart a homestead out of the common property of the decedent.

In the estate of Ballentine, 45 Cal. 696 (which has been repeatedly affirmed), it is definitely settled that this provi-

sion is mandatory. Therefore, if there is suitable property in the estate for the purpose it must be set aside.

In Estate of Walkerly, 81 Cal. 583, 22 Pac. 888, the court uses this language: "It is insisted by the appellants that the condition of the estate was such that, considering the liberal provision made for the wife and child of the deceased by his will, so valuable a homestead should not have been allowed. But this was a matter within the discretion of the court below, and, unless it appears that such discretion has been abused, we think this court should not interfere."

In that case, however, the estate was worth more than seven times as much as in this, and the homestead sought was worth only twice as much, and there was an infant child to be supported, beside the widow.

The petitioner here has already reached that time of life when the homestead cannot be much longer required by her. If it were within the power of the court to set apart this property to her for her life, there would not be so much objection. But under the construction put upon section 1468 of the Code of Civil Procedure in the case of Phelan v. Smith, 100 Cal. 170, 34 Pac. 667, the homestead cannot be limited as to the time of its duration. And under the decision in the Walkerly case it is likewise settled that there is no arbitrary limitation as to value.

It is easy to conceive of a case where the court would be practically compelled, in the exercise of a sound discretion, to decline to set apart a homestead, even though there were a dwelling-house among the common property of the decedent. As, for instance, if the estate were insolvent, and the whole or nearly all of the estate consisted of the property sought to be set aside, particularly where that property is of great value; thus, it would be manifestly wrong to set aside a homestead worth $20,000 and leave nothing whatever for creditors where the amount of indebtedness was large.

It is true that the case at bar is not of the character above suggested, but in this case there is a large number of relatives who are heirs to only one-fourth of the estate, and their counsel argues that the three-fourths that remains to the petitioner constitutes more than she can possibly require during her lifetime without setting apart to her in addition this

valuable property which she can use only for a short time; and he appeals to the court to exercise that discretion which is vested in it, in such a case as that presented here, and prevent a manifest injustice by deciding that in this case there is no suitable property in the estate out of which to select a homestead.

The three petitions referred to are presented together, and the counsel for the foreign heirs asks that the court will consider them at the same time, and, if the prayer for a homestead is granted under the circumstances, the matters above urged should have some influence in fixing the family allowance at as low an amount as will suffice to satisfy the requirements of law and the absolute necessities of the case: See Estate of Lux, 100 Cal. 593, 35 Pac. 341. In that case the court say: "We are not to be understood as holding that the value of the property set apart for the use of the family under section 1465, Code of Civil Procedure, or the income of the property, is not to be considered in determining what is a reasonable allowance."

In any event regard should be had to the condition of the estate and the mode in which the family had lived during the lifetime of the deceased: Estate of Lux, 100 Cal. 593, 35 Pac. 341; Estate of Stevens, 83 Cal. 325, 17 Am. St. Rep. 252, 23 Pac. 379.

Estate of Walkerly, 77 Cal. 642, 20 Pac. 150, where in an estate of nearly $800,000 the wife and child were allowed only $420, and even this amount was objected to as excessive.

If the petition for a homestead is denied, no doubt the court could permit the petitioner to occupy the property in question during administration free of rent, and could allow her a much larger family allowance than it otherwise would; but if the homestead is set apart as prayed for, then counsel submits that the family allowance should be not more than one-half of the amount asked for.

The gross income of the estate being only about $300 per month, taxes, repairs and other expenses will consume a portion even of this amount, and the family allowance should certainly not encroach upon the main body of the estate.

With reference to the application for leave to erect a monument and to be reimbursed for the expensive burial lot pur-

chased, all that has been said in relation to the condition of the estate and the other allowances sought by the widow is equally applicable.

While suitable respect should be shown to the deceased in the matter of a burial place and monument, and while the court in its discretion can make allowance out of the estate therefor, as decided in Van Emon v. Superior Court, 76 Cal. 589, 9 Am. St. Rep. 258, 18 Pac. 877; Estate of Weringer, 100 Cal. 345, 34 Pac. 825, yet large expenditures in this way represent the sentiment of the persons that incur them rather than the necessary expenditure of trust funds, and courts should be cautious in allowing expenditures of this character.

The widow very naturally and properly desires to see a costly monument erected in this case, but it must be borne in mind that the sentiment of other heirs may not be as strong in that direction, and it is not for the petitioner to donate the property of the estate intrusted to her hands for the gratification of her own feelings.

In all of the circumstances no more of the funds of the estate should be devoted to this purpose than such amount as is absolutely necessary to properly mark the grave of deceased, and all other and further sums that may be required to erect such a monument as the petitioner may desire should be contributed from her private purse, which is ample for the purpose.

The estate was appraised at $76,953.16. It may be assumed that the real estate was more valuable before the panic of last year, and will be again more valuable. Of this total, there was $23,153.16 of money, which is drawing interest at the rate of about five per cent per annum, say $95 monthly. The rents of the property are $268 monthly; total return, $373. There are no debts of any kind. The property is community property. There are no children and no near kindred. The family of the deceased is the widow, who has been married over forty years.

A.—*As to the homestead:* It may be assumed that the homestead property has been, and will be, worth more than $5,000, although at present it is not. The value, however, in this instance is of no consequence. It is the duty of the court to

set it aside to the widow. She is the family of the decedent: Code Civ. Proc., secs. 1465, 1468; Estate of Ballentine, 45 Cal. 696; Mawson v. Mawson, 50 Cal. 541; Estate McCauley, 50 Cal. 545; Lord v. Lord, 65 Cal. 84, 3 Pac. 96; Kearny v. Kearny, 72 Cal. 591, 15 Pac. 769; In re Noah, 73 Cal. 591, 2 Am. St. Rep. 834, 15 Pac. 290; McKinne v. Schaeffer, 74 Cal. 614, 16 Pac. 509; Burdick's Estate, 76 Cal. 639, 18 Pac. 805; Walkerly Estate, 77 Cal. 644, 20 Pac. 150; In re Armstrong, 80 Cal. 71, 22 Pac. 79; In re Walkerly, 81 Cal. 579, 22 Pac. 888; In re Schmidt, 94 Cal. 336, 29 Pac. 714; In re Smith, 99 Cal. 451, 34 Pac. 77; Phelan v. Smith, 100 Cal. 170, 34 Pac. 667; Estate of Garrity, 108 Cal. 463, 38 Pac. 628, 41 Pac. 485.

In Re Armstrong it was settled that the widow without children was entitled to the homestead. In the Walkerly Estate it was held that there was no limitation as to value. This point was most conclusively settled in Re Smith, a Santa Clara case, where the matter was forcibly presented. In that case the rents were between $400 and $500 per month, and the value about $75,000. In these respects it was very similar to the one at bar.

It is of no consequence, as alleged by counsel, that the petitioner is old and will not require the homestead for many years. It is plainly the duty of the court to award the same to her. It then is taken out of the estate and becomes her property, with full power to mortgage or sell or devise as she sees fit: McKinne v. Schaeffer, 74 Cal. 614, 16 Pac. 509.

Even if the petitioner were worth millions it would be the duty of the court to set aside the homestead. It is a statutory right, and there is no way of evading the plain terms of the law.

Not even the insolvency of the estate would bar the petitioner from the homestead, for the reason that it was the intention of the law to protect the family, which in nine out of every ten cases needs such protection badly: In re Bowman, 69 Cal. 244, 10 Pac. 412. Hence it is of no consequence whether the widow obtains all or three-fourths of the estate. This should not cut any figure. Moreover, we have her sworn testimony that she has no property of her own

and is dependent upon the estate for support. She has been the partner of decedent for about forty years. The property in the estate was gradually accumulated by both. The relatives of decedent did not help to make it. Hence they should not be heard to protest successfully against this petition.

B.—*Family allowance:* The reason given for the homestead will also apply to the family allowance. The very case cited by the attorney for the absent heirs (Lux's Estate, 100 Cal 593, 35 Pac. 341), lays down the rule that the condition of the estate and the mode of living during the lifetime of the spouses should control. Mrs. Hessler testified that the expenses of the family in her husband's lifetime amounted to $550 or thereabouts every month. She gave a list of all articles which were absolutely necessary for her support and maintenance, and her position in society. The representative of the absent heirs says that $250 will suffice, but that if the petition for a homestead be denied, the court can grant a much larger allowance and be more liberal. But such is not the proper construction to be placed upon the law. In such a case as the one at bar the court should grant a liberal allowance, even if in that way it anticipated the widow's share.

In volume 1, Woerner's American Law of Administration, page 165, section 79, we read: "If the estate is large, apparently solvent, and the allowance merely an anticipation of the widow's distributive share, a more liberal allowance will be justified than where it is small or insolvent; and what would be a reasonable allowance for one accustomed to privation and labor might be very unreasonable for one raised in affluence." Even if the widow had a separate estate of her own (which she has not), she would be entitled to a family allowance: Lux's Estate, 100 Cal. 593, 35 Pac. 341; Stevens' Estate, 83 Cal. 325, 17 Am. St. Rep. 252, 23 Pac. 379; Walkerly's Estate, 77 Cal. 642, 20 Pac. 150; Schouler on Executors, sec. 449; Sawyer v. Sawyer, 28 Vt. 245; Strawn v. Strawn, 53 Ill. 263; Thompson v. Thompson, 51 Ala. 493.

In this state, no matter what the amount of the allowance may be, it is undeniable that the right to an allowance commences from the death of the decedent; the only question for the court is the quantum.

C.—*Monument:* The application of the widow states that $5,000 would be a suitable sum for a monument to be erected over the grave of her deceased husband. Objection is made that the amount is too large, and that the court should only allow a certain sum to decently mark the grave of deceased, and that any further expenditure should be made by petitioner herself. In reply to this objection petitioner's counsel says: It is conceded that if this estate were insolvent no such sum should be allowed. In the case at bar we have a comparatively rich estate, and no children, and no near kindred, and the widow naturally desires to erect a handsome monument to decedent's memory. Why should she not be allowed to do so? Who will be injured? No one. There are no children. The widow alone represents the family. She assisted in making the estate as valuable as it is. Certainly it is only just that she should be allowed to make a liberal expenditure in this matter.

It was held in McGlinsey's Appeal, 14 Serg. & R. 64, that where one leaves a good estate and no children or near kindred the cost of a handsome monument will be allowed.

In Pistorius' Appeal, 53 Mich. 350, 19 N. W. 31, it is said: "A delicate regard for all those whose pecuniary interests are likely to be diminished by the funeral charges should influence the legal representative; but at the same time, if the estate be solvent, he need not permit penurious and unfeeling kindred to rob the deceased of the last decent tributes to his memory."

In Bainbridge's Appeal, 97 Pa. 482, the court refused to control the discretion of an executor in using the entire residue of the estate, after paying legacies, in erecting a monument. In that case, however, the will provided for the expenditure.

It has been held in some states that the widow might of her own volition render the estate liable for this expensive monument: Ferrin v. Myrick, 41 N. Y. 315; Porter's Estate, 77 Pa. 43. But in this case the widow does not desire to do this. Hence, she has made due application to the court and given notice to all parties interested.

The expense of the monument is clearly a charge for funeral expenses, and a reasonable amount for this purpose should

be allowed: Van Emon v. Superior Court, 76 Cal. 589, 9 Am. St. Rep. 258, 18 Pac. 877; Estate of Weringer, 100 Cal. 345, 34 Pac. 825; 2 Woerner's American Law of Administration, sec. 358, and authorities in notes 6, 7 and 9.

Counsel for the foreign heirs does not contend that the cost of a monument is not chargeable to the estate. The only question with him is the amount. In the matter of monuments, as in the homestead and family allowance, courts have been liberal in all cases where estate has been solvent, and where the interests of children have not been lessened.

The court is of opinion that the applications should be granted; that the widow is entitled to a homestead and to an allowance of $300 per month; and that the sum of $2,500 may be appropriated for the purpose of erecting a monument to the memory of deceased.

So ordered.

---

Reasonable Expenses for the Funeral of a deceased and the erection of a monument at his grave are proper charges against his estate: Estate of Koppikus, 1 Cal. App. 84, 81 Pac. 732; O'Donnell v. Slack, 123 Cal. 285, 55 Pac. 906, 43 L. R. A. 388; Estate of Smith, 25 Wash. 539, 66 Pac. 93.

The Law Governing Probate Homesteads and Family Allowances will be found discussed in 1 Ross on Probate Law and Practice, 457-518.