IN THE MATTER OF THE ESTATE OF J. M. DOUGLASS, DECEASED.

[No. 30,053; decided November 30, 1904.]

Inventory—Affidavit of Executor.—The failure of an executor to affix his affidavit to an inventory of the estate does not render the inventory of no effect.

Inventory—Filing Copy in Case of Loss.—In this case an order was made that a copy of the inventory of the estate be filed nunc pro tunc in lieu of the original inventory and appraisement, but prior to the entry of the order the original inventory was restored to the files.

Motion to file copy for lost record.

Charles F. Hanlon, for William Jay Smith.

COFFEY, J. William Jay Smith, on June 16, 1904, was appointed an appraiser along with Joseph M. Quay and Homer S. King, to make a new appraisement of this estate.

He met his fellow-appraisers at Wells, Fargo & Co.'s Bank. W. J. Douglass and R. L. Douglass, executors and F. M. Huffaker, their attorney, were present and were asked by William Jay Smith to exhibit any property they had belonging to the estate. The executors and their attorney stated to this board of appraisers that there was no property in California and exhibited nothing. The code requires the appraisers to appraise the property exhibited, viz.: "Sec. 1445. Their oath 'that they will truly, honestly and impartially appraise the property exhibited to them according to the best of their knowledge and ability.'"

Mr. Huffaker, on August 15, 1904 filed an alleged inventory which he prepared and caused this second board of appraisers to sign. It stated that the appraisers qualified on the same day. It set forth that the executors reported to them that all the property of J. M. Douglass was in the state of Nevada, and that there was no estate in California. The executors signed such a statement in the inventory and the appraisers reported in the same inventory this allegation of the executors.

Thereafter, on September 16, 1904, the court made the following order:

" (Filed September 21, 1904.)

"[Title of Court and Cause.]

"The court having heard testimony and having examined the records in the above-entitled matter; and it appearing to the court that there are assets belonging to the above-entitled estate which do not appear in and which have not been appraised as appears by the inventory and appraisement on file herein, which appraisement was made by Homer S. King, Joseph M. Quay and William Jay Smith, the duly appointed and qualified appraisers of the said estate.

"It is hereby ordered that said appraisers make and return to this court a new and further appraisement of all the assets of said estate and especially of all the money and property mentioned in the petition for probate of authenticated will

on file herein, and that a copy of this order be served upon each of said appraisers.

"Dated September 16, 1904.

"J. V. COFFEY,
"Judge of the Superior Court."

This order was regular and proper.

Held: If the first is in proper form, and the second involves no additions or changes, it is mere surplusage; but it may often occur from the discovery of other property and from various other causes, that a second or further inventory and appraisement is desirable. In all such cases the court, under the powers conferred upon it, may, we have no doubt, inform itself by means of a new or further inventory and appraisement of the true condition of the estate: Phelan v. Smith, 100 Cal. 169, 34 Pac. 667.

The affidavit of the executors to the new inventory ordered by the court could not be obtained, but it is not necessary.

Held: Section 1449 of the Code of Civil Procedure does make it the duty of the executor or administrator to indorse upon or annex to the inventory, after it is completed by the appraisers, an affidavit to the general effect that the inventory contains a true statement of all the property of the decedent of which he has any knowledge, and of all claims which the decedent had against him, but in our opinion this affidavit is not necessary to give a legal existence to the inventory itself. An inventory may be said to be completed when the work of the appraisers has been concluded, and the instrument showing the result of their labors has been signed and delivered by them. The purpose of the statute in requiring the affidavit mentioned in section 1449 of the Code of Civil Procedure is to furnish an additional assurance that the inventory contains a full statement of all the property of the estate known to the executor or administrator, and also to obtain his solemn admission that he is properly chargeable in his accounts with all the property that is described in the inventory; and the court may, upon its own motion, or upon the application of any person interested in the estate, compel the executor or administrator to comply with this section; but the failure of the executor or administrator to discharge this duty would not render the inventory, properly signed and

delivered by the appraisers, of no effect as an inventory: In re Lux's Estate, 100 Cal. 601, 602, 35 Pac. 341.

Now the first thing that William Jay Smith did was to try to carry out this order of September 30, 1904. He called on Homer S. King, his fellow-appraiser, who was the president of Wells, Fargo & Co.'s Bank, and asked him to disclose the amount of cash, stocks and bonds in his bank's hands on January 17, 1904, the date of the death of J. M. Douglass. King refused. He asked then if any of these properties were then or still in the bank; Mr. King refused this and all other information. And remember, that Homer S. King qualified under oath as an appraiser on August 15, 1904, in which he took an oath that he would "truly, honestly and impartially appraise the property exhibited to them according to the best of their (his) knowledge and ability." He did not deny his ability, nor his knowledge; he had control of these moneys, stocks and bonds when Douglass died and must have known all about them. He is subject to just criticism for accepting and qualifying as an officer of the court to perform a duty that he would not perform and which he prevented his fellow-appraisers from performing. Accordingly William Jay Smith applied to the clerk for the old inventory and also caused King, Shaw and Bannan, the first board of appraisers to be cited, to reveal its contents, and caused a subpoena duces tecum to be served upon Mr. Lipman, the cashier of Wells, Fargo & Co.'s Bank.

This move revealed the following facts: that a petition was filed by the executors on February 9, 1904, which stated that J. M. Douglass did leave an estate in San Francisco, California, viz.:

Cash...... ....................... ..........$ 16,927.26
12,200 shares Spring Valley Water stock....... 410,550.00
49 bonds Spring Valley Water stock ........... 49,000.00
2200 shares Contra Costa Water stock.......... 87,000.00
And in Eldorado County, Cal., an undeveloped
    mining claim in Placerville, called "Mary-
    land Quartz Mine," value................ 100.00
                                                  ———————

      Total........ ........ .................$613,577.26

That the court in appointing the executors found the same facts.

That the books produced by Lipman showed that the following properties were in the bank, viz.:

1904
Jan. 17, Cash........ ................ ........$13,522.20
Jan. 21, Deposit..... ........................ 273.45
Jan. 29, Deposit........ ..................... 2,832.55

Total cash........ ............ .....$16,927.20

49 bonds and 12,200 shares Spring Valley and 2200 shares Contra Costa Water stock.

The book in the assessor's office shows that the assessor's deputy copied out of the first inventory filed herein the following assets in San Francisco, viz.:

$ 30,053.00 Douglass, J. M. May 4, 04 Inventory, p. 131.
 27,080.70 Money.
 47,000.00 49 bonds Spring Valley Water Co.
488,000.00 12,200 shares C. S. Valley Water Co.
 50,000.00 2200 shares Contra Costa Water Co.

$612,080.76
No R. E.

Lipman testified that the executors drew out all the moneys and stocks of J. M. Douglass from the bank under their power as California executors on March 1, 1904, and immediately redeposited the same on March 1, 1904, in same bank, but in their own names as executors. The property so remained until May 2, 1904, when the executors drew out all the cash ($27,082.76) and all the stocks and bonds and gave their receipt on all of same to the bank as executors.

On the same day, May 2, 1904, the attorney for the executors suggested three names to the judge of this court as candidates for the positions of appraisers and the court appointed them the same day, May 2, 1904, viz.: B. F. Shaw, William Bannan and Homer S. King.

On May 4, 1904, a meeting was had at the office of Shaw and Douglass, 316 Pine street. There attended Shaw, Ban-

nan, two of the appraisers; F. M. Huffaker, the attorney; R. L. Douglass and William J. Douglass, executors. These two appraisers qualified before James Mason, notary, and they received from Huffaker the inventory and appraisement which listed in detailed items all the cash and bonds and stock as stated in the assessor's book and also the mine in Placerville. They signed this appraisement, and it was filed by Huffaker on May 4, 1904, and the clerk of this court entered in his register of actions the following record of its filing and its contents, viz.:

"1904.

May 4. Inventory and appraisement ($612,082.70) filed."

The court thereupon examined this inventory and found it did not conform in some respects to the rules, and John J. Boyle wrote to Mr. Huffaker to that effect, to Virginia City, and Mr. Huffaker replied by letter to Mr. Boyle on May 13, 1904, and said:

"Virginia City, Nevada, May 13, 1904.

"John J. Boyle, Esq., Deputy Clerk Dept. 9, San Francisco, Cal.

"Dear Sir: .... I. do not claim infallibility, and if under the circumstances, the Court deems the inventory imperfect in form, I would ask leave to withdraw it, in order to have the imperfection corrected. I always prefer to have the three appraisers sign an inventory, but where an estate is so completely disposed of, as the will of Douglass disposes of his, I have considered two sufficient as the law provides, without reference to the rules. However, as my only desire is to conform to the law, and this is a matter that can be readily corrected, if I am permitted to withdraw the present inventory, I will have the executors return another. It seems to me this will be a direct method of remedying the suggested defect, if it shall be considered a defect. In fact I appreciate the purpose of having the reason for non-action of one appraiser appear, in cases where it is applicable, but allow me to suggest that it strikes me, the non-acting appraiser should assign his reason and not the acting appraisers for

him, as he might at any time come in and say the reason assigned by the acting ones was not correct. Then where would the Court and inventory be? This is merely as the matter impresses me. Call Judge Coffey's attention to this and I will cheerfully endeavor to have an acceptable inventory presented.''

Thereupon on May 14, 1904, Mr. Boyle replied, and on May 17, 1904, Mr. Huffaker wrote Mr. Boyle, among other things, viz.:

"Virginia City, Nevada, May 17, 1904.

"Dear Sir: Replying to yours of the 14th inst. in re Douglass Estate, permit me to say, that I have never understood in my practice, either in Nevada or California, in each of which I have had considerable practice in probate during the past 15 years, that as an attorney in an estate in the matter of appointing appraisers I was, in suggesting proper persons to the Court, doing other than aiding the Court to select proper persons, and I trust in this estate no misunderstanding has resulted therefrom.

"Sec. 129, C. C. P., is but the common statute of the different states, and a very necessary one, and no one is a greater stickler for conformity to rules of court than I, and I am not intending by any means to convey the idea that I have any complaint about any of your rules.

"They are all right when the conditions to which they apply exist, but there is a well-recognized maxim in the law, that when the reason for any rule ceases, the rule itself ceases. But in the matter in hand the simple question is the inventory, and as your statute requires the Court to approve or reject an inventory for incorrectness, and the time not having elapsed for filing an inventory, what objection is there to withdrawing that incorrect inventory and filing a correct one?''

Afterward, on June 16, 1904, Mr. Huffaker appeared in this court and obtained an order vacating the order of May 2, 1904, appointing Shaw, Bannan and King appraisers, and also an order appointing King, Quay and Smith appraisers.

The order of withdrawal in handwriting of Mr. Huffaker except the signature of the judge, read as follows:

"[Title of Court and Cause.]

"Ordered that the executors of said estate be and they are hereby permitted to withdraw from the above case the inventory heretofore filed by the executors.

"Done in open court this June 14, 1904.

"J. V. COFFEY,

"Judge."

Afterward, on October 29, 1904, the court made the following order:

"[Title of Court and Cause.]

"On motion of Charles F. Hanlon, attorney for William Jay Smith, one of the appraisers appointed herein on June 16, 1904, with Homer S. King and Joseph M. Quay, constituting a board of three appraisers to reappraise the property of this estate, and it appearing that an examination of the first inventory filed herein on May 4, 1904, is desired by the said William Jay Smith as one of the said appraisers, and it also appearing that said original inventory and appraisement was on or about the 14th day of June, 1904, withdrawn temporarily from the files of this court by said executors or by F. M. Huffaker, the attorney for the said executors appointed herein, and has not yet been returned to this court or replaced among the files, it is ordered and decreed that said executors, W. J. Douglass and R. L. Douglass and said F. M. Huffaker, their attorney, be and they are hereby ordered to return forthwith to this court and place among the said files and papers of this estate the said inventory and appraisement withdrawn by them or some of them as aforesaid.

"J. V. COFFEY.

"Done in open court this 29th day of October, 1904."

That order was at once served upon Mr. Huffaker and the executors in Nevada, to which Mr. Huffaker wrote the following reply:

"Charles F. Hanlon, Esq., San Francisco, Cal.

"Dear Sir: Having just returned from the East I find a note from you with copy of order of Judge Coffey dated October 31, to return a purported inventory of the Douglass Estate for Appraiser Smith's examination. The order re-

cites 'withdrawn temporarily.' This is not correct. Judge Coffey remarked when I asked to withdraw it, that it had never been filed within the meaning of the statute, and by order set aside the order appointing appraisers and appointed other appraisers on his own motion, and directed the County Clerk to hand over the papers, who said to me it is in the office. I went to Ernest Hawley, the deputy, and said the Judge having appointed other appraisers, says give the inventory to me. Hawley says I want something to show for it. I said draw up what you desire and I will have the Judge sign it, which was done. This is all there was to it except Hawley remarked the whole thing will have to be done over again. I replied yes. Had you understood this I do not think you would have applied for any such order as Mr. Smith could have examined it if found without any such order and under the circumstances I would take it as a favor if you would have your motion and order set aside, when we can get the appraisers together and let them make an inventory as the law directs. If you do not do this, I will endeavor to find the paper as I took no care of it deeming it stricken from the files, and send it to the clerk as the order requires.

"I shall be pleased to hear from you.

"Yours truly,
"F. M. HUFFAKER."

Now section 1045 of the Code of Civil Procedure reads as follows: "If an original pleading or paper be lost, the court may authorize a copy thereof to be filed and used instead of the original."

And in Sichler v. Look, 93 Cal. 608, 29 Pac. 220, it was held: "When jurisdiction has once been acquired, it is not lost by a failure to preserve a record of the acts by which it was acquired, and the acts of the court in exercising its inherent power to amend its record, or to supply a lost record, will be presumed to have been properly exercised."

And in Knowlton v. Mackenzie, 110 Cal. 190, 42 Pac. 580, it was held: "Upon the order of the court made in the present case, the substituted papers are entitled to the same weight as would be the originals."

For the reasons and upon the authorities hereinabove set forth, it is ordered that the copy of inventory be filed nunc pro tunc as of May 4, 1904, in lieu of the original inventory and appraisement.

Prior to the entry of the foregoing order to file copy, the original inventory was restored to the files by the attorney for the executors.

---

The Inventory of an Estate must be signed by the appraisers, and the executor or administrator should take and subscribe an oath that it contains a true statement of all the estate "which has come to his knowledge and possession, and particularly of all moneys belonging to the decedent, and of all just claims of the decedent against the affiant. The oath must be indorsed upon or annexed to the inventory." The object of requiring the affidavit is probably not to impart validity to the inventory, but rather to furnish an additional assurance that it contains all the property within the knowledge or possession of the affiant, and to obtain his solemn admission that he is properly chargeable in his account with the property which has been listed. An inventory may be said to be complete when the work of the appraisers has been concluded, and the instrument showing the results of their labors has been signed and delivered by them. The failure of the executor or administrator to take and subscribe the statutory oath does not render the writing, properly signed and delivered by the appraisers, of no effect as an inventory: 1 Ross on Probate Law and Practice, 427.