## Callin Estate

*Harriet M. Mims*, for exceptant.
*Curtin & Heefner*, for accountant.

SATTERTHWAITE, J., August 4, 1961.—The fundamental and controlling question in determining the proper distribution of the within estate under decedent's will is the effect to be given to the impracticability of purpose, in fact the impossibility of actually carrying out, of testatrix' directions respecting a cemetery monument on a family burial lot. If this provision be effective, the net estate will be insufficient for payment of all the legacies under the will, and questions of abatement would be presented. On the other hand, if this part of the will not be performed, the estate would apparently exceed the total of the other bequests therein, resulting in a partial intestacy since there is no residuary clause. The matter is now before the court on exceptions to the report of an auditor appointed to hear evidence and resolve the foregoing problems which arose upon the filing of the accounting of the executrix.

Testatrix, a widow and childless, died November 25, 1955, a resident of Morrisville, this county. Her will, dated February 14, 1945, is most definitely not a model of legal draftsmanship. After directing payment of her debts and funeral expenses and appointing an executrix, she provided therein:

"Enclosed with this will is a picture and Drawing for a Monument to be erected on the Smith-Callin Cemetery Lot at Oak Grove Cemetery At Delaware

Ohio Where All of us Are Burried. This monument To cost 8 Thousand Dollars the size of Dimentions or a size to fit the sum on Money. The present Monument to be sold or turned in as part of the cost of the new one. Also corner stones that are there to be replaced with new ones ten inches square. Head Stones like the ones that are already there are to be placed at the graves of Myself and Husband Clement."

She then made provisions for a $600 fund to the same cemetery for decoration of graves in the family plot, directed payment of pecuniary legacies, in amounts varying from $50 to $500 each and totaling approximately $3,000, to specified churches, clubs, friends and "children in the neighborhood," disposed of specific items of personal effects, and concluded with the following clause:

"The House 53 Union St. Morrisville is for Mary Cox Hudler providing she will consent to make it her home to the end of her life. if not the property is to be sold and the money is to be spent for Stained glass windows in the new Presbyterian Church in Morrisville One to be for the Primary Room A picture of Jesus in 'Suffer the Little Children To come to me', in Beautiful collors."

The picture and drawing of decedent's planned cemetery monument were not probated with the will as they should have been; they were, however, identified by the executrix as found with the will and received in evidence by the auditor. They depict an ornate, many-tiered, massive stone monument, approximately 13 or 14 feet in overall height, with fluted columns and an elaborate entablature resting thereon, all supported on a base seven by five feet in size. The evidence before the auditor disclosed that it would cost $12,000 to $15,000 to erect such a monument. It also appeared that the burial lot in question, approximately 13 by 14 feet in dimension, in which are in-

terred decedent, her husband, her father and her mother, was intended as a four-grave lot; that each grave had a headstone (decedent herself had erected in her lifetime the headstones contemplated by the above-quoted portion of her will for her husband and herself) ; that the existing large family monument thereon, four and a half feet long, two and a half feet wide and over five feet high, with the family name "Smith" engraved thereon, as well as a large tree, occupy substantially all of the balance of the lot; that the existing monument would cost about $5,000 to replace, is substantially in keeping with the nature of the surroundings in the Oak Grove Cemetery, and would be worthless if removed, having no "trade-in" value on a new monument; that the approval of the Oak Grove Cemetery authorities under the deed for the plot is requisite for the design of monuments to be placed therein; that said authorities have refused to approve the monument proposed by decedent's drawing.

The record before the auditor also disclosed that Mary Cox Hudler, the devisee of the Morrisville house and lot mentioned in the will, renounced the devise and that the executrix had sold the same, realizing net proceeds of $7,984.65 therefrom. The auditor's report further disclosed that there was available for distribution in cash, after deduction of the value of the specific in-kind bequests and the expenses of audit, only $7,447.94 over and above the proceeds of the real estate.

The auditor set aside the full sum of $8,000 for the executrix to erect a "scaled-down" monument after obtaining quotations therefor; he also authorized payment of $35 for the placement of corner stones on the burial lot, $600 for the testamentary grave decoration fund, and $80 for cutting decedent's date of death on her headstone and the family name "Callin" on the

380

existing large monument. (No argument has been made with respect to the latter three amounts, although they were, in part, the subjects of exception, and they may therefore be considered approved without further discussion.) The auditor further reasoned that these amounts were preferred and should be paid in full even at the expense of the specific gift of the real estate proceeds for the benefit of the Morrisville Presbyterian Church, although he recognized that the latter was preferred over the general pecuniary legacies. Accordingly, the award in favor of the church was reduced from $7,984.65 to $6,717.59 to make up the deficiency of $1,267.06 by which the net cash personal estate failed to meet the $8,715.00 awarded on account of the cemetery provisions of the will, and the other pecuniary legatees were awarded nothing.

We believe that the auditor's scheme of distribution was erroneous and that, under the circumstances, the $8,000 bequest for the family monument was ineffective and should have been totally disallowed. Since this disposition of the case makes it unnecessary to do so, we do not decide whether the auditor was correct in holding that this bequest would take priority and would not abate with the other general legacies. He relied upon a dictum in Calvin's Estate, 18 Dist. R. 809, 815, in this connection, and see also Sock's Estate, 9 Dist. R. 101, 102, where the opinion unnecessarily volunteered a statement involving the analogous problem of abatement of a testamentary fund for care of a burial lot. On the other hand, the dictum expressed in the latter case was specifically repudiated in Stuart's Estate, 30 Dist. R. 299, which held that such a provision is a legacy subject to abatement as any other legacy. Accord, Ridinger Estate, 3 Fiduc. Rep. 600, 65 Dauph. 281.

We quite agree with the learned auditor that a testamentary direction to erect a cemetery monument is by

and large a valid and enforceable bequest: Ingles Estate, 76 Pa. 430; Porter's Estate, 77 Pa. 43; Bainbridge's Appeal, 97 Pa. 482; Nolan Estate, 352 Pa. 75; Calvin's Estate, supra; Reimel's Estate, 10 D. & C. 465. Moreover, the court will not permit the parties beneficially interested in the estate to arrange among themselves to defeat such a provision: Stoffel's Estate, 295 Pa. 248. But this principle cannot be controlling here for the simple reason that testatrix' desires just cannot be carried out as she expressed them. This is not a case where the law, the court or even the parties are attempting to thwart decedent's plans; it is merely a situation where the circumstances are such as to make it physically and financially impossible to accomplish them. The monument she proposed cannot be built for the money she allotted thereto; even if it could, the cemetery authorities, having the legal power so to do, would veto the proposal. On the latter point, compare Sparr's Estate, 12 Dist. R. 245.

The auditor, however, felt that the $8,000 had to be spent for monument purposes of some sort, and, based on testimony before him that a differently designed monument of smaller overall size could possibly be erected for that sum, he directed the executrix to pursue the latter course. In effect, he thereby rewrote testatrix' will by approving tentative new plans which she had not contemplated; he also ignored the cemetery company's right of control, since the alternative proposal of the monument maker in evidence would require an even larger base than that planned by testatrix which had been disapproved.

But the courts have no general power to approximate or provide substitutionary considerations where the will of decedent cannot be carried out as written; the doctrine of cy pres is applicable only to charitable trusts, and provisions relating to family burial lots are matters of purely private concern and not of charity:

Dreisbach Estate, 384 Pa. 535, 538, and authorities cited.

The within case is squarely ruled by Kalbach's Estate, 10 D. & C. 195, decided by the Orphans' Court of Berks County. There, as here, testatrix made elaborate and detailed testamentary provision for markers on a family burial plot and specified the cost thereof; there, as here, the markers could not be obtained at the cost mentioned in the will; there, as here, markers of a different size and design could be obtained at the testamentary price; there, as here, the markers specified would not appropriately fit the burial plot; there, as here, there was disapproval of the proposal by others who had a legitimate and controlling interest therein. Judge Marx held that the testamentary directions were inoperative in that case and discharged the trustees "from fulfilling, or attempting to fulfill, or approximating, the requirements thereof", observing, inter alia, at pages 198-99, as follows:

"Testatrix directs application of the bulk of her estate to the purchase and erection of ten granite slabs or tombstones. If it were possible to carry out the details of her directions and to comply with her wish, our own views of the propriety of such a disposition would not dare interfere with such compliance. However, testimony taken, . . . clearly establishes the impossibility of full compliance with the wishes of testatrix. Under the petition presented, the trustees of the fund ask us to declare, *inter alia*, whether, under an application of the *cy pres* doctrine, they may approximate the testamentary directions and details and purchase tombstones . . . [of different design as testified could be used] . . .

"Under our law, . . . this rule [cy pres doctrine] would appear to be applicable only to trusts constituting charities and devises and contracts wherein the future is provided for . . .

"The trust under the Kalbach will is for the purchase and erection of tombstones. It is not a charity: . . . It is, furthermore, not a devise or contract providing for the future. It is purely and entirely a trust for private or personal use, to be performed presently, forthwith completed and making no provision for the future. The rule of *cy pres* may not be applied to the interpretation and execution of the trust now before us.

"May this court, under its general equity or statutory powers, modify and order an approximation of the testamentary direction? Relative to wills, the function of the court is (1) to determine testator's intent, and (2) to carry out that intent . . .

"Since the [relevant] provisions . . . of this will clearly express testatrix's intent, and that intent is impossible of performance, it remains only for this court to declare the section inoperative."

We believe those same considerations to be applicable in the instant case, and, therefore, we hold that the provisions of testatrix' will, purporting to dictate the monument to be placed on the family burial lot, while legally valid, are inoperative and cannot be carried out. This will have the effect, of course, of restoring funds for distribution in full to the various legatees, including the church, with the balance to the next of kin; it may also require reexamination of the inheritance tax picture. The latter questions we cannot pass upon at this point, since the record is insufficient for the purpose. We, therefore, suggest that the executrix prepare and file an appropriate schedule or statement of proposed distribution under the relevant general rules of this court for approval in due course. No intimation has been expressed that the matter cannot be so handled or that any necessity exists for resubmitting it to the auditor. Parenthetically, we also note our approval of the form of and

condition upon the auditor's award to the church and his comments relative to the possibility of cy pres applications in connection therewith, if necessary. We also approve the auditor's statement of fees and expenses.

### Order

And now, August 4, 1961, for the reasons stated in the foregoing opinion, the first exception filed to the within report of the auditor in this estate is sustained, the second exception is overruled and the third and the fourth are not passed on, the $8,000 bequest for the cemetery monument is declared inoperative, void and of no effect, and the executrix is hereby directed to prepare, file and otherwise comply with all general rules of this court with respect to a statement of proposed distribution in accordance with the foregoing opinion and the other relevant facts of the case.